PEOPLE v STONE

PEOPLE v BYRD

Docket Nos. 135426, 135942. Submitted July 22, 1992, at Grand Rapids. Decided August 18, 1992, at 9:05 A.M.

Jason Stone and Marlon A. Byrd, both juveniles, were convicted by separate juries following a joint trial in the Calhoun Circuit Court, Ronald A. Lebeuf, J., of armed robbery. Each was sentenced to 7½ to 15 years in prison. The defendants appealed, and the appeals were consolidated.

The Court of Appeals *held:*

1. The court did not err in denying Byrd's motion for a mistrial after the prosecutor questioned a police officer regarding a statement made by Stone. The statement was not admitted; the question was stricken, and Byrd was not prejudiced.

2. The court did not err in admitting evidence that Byrd was identified by a tracking dog. There was sufficient corroborating evidence of his identification to allow admission of the evidence.

3. Stone was not denied the right to an impartial jury when Byrd was forced, in the presence of Stone's jury, to try on a jacket that matched the description of one worn by the robbers and that was found near the defendants when they were apprehended.

4. Stone was not denied equal protection by the court's refusal to approve funds to enable him to hire an independent psychologist to testify at the dispositional hearing. He had access to a competent psychologist appointed by the juvenile division of the probate court. The fact that the psychologist did not come to the conclusion that Stone desired is not relevant, and no bias was shown.

5. The court made adequate findings regarding the likelihood of rehabilitation under the adult and juvenile systems with regard to the defendants.

6. Byrd was properly assessed fifteen points for prior record

REFERENCES

Am Jur 2d, Criminal Law § 538; Evidence §§ 378, 379.

Evidence of trailing by dogs in criminal cases, 18 ALR3d 1221.

variable 6 because he was on juvenile probation at the time of the offense. The guidelines were properly scored.

7. The court abused its discretion in sentencing the defendants to 7½-year minimum terms. There were no special circumstances, and rehabilitation of the defendants was still possible.

Convictions affirmed, remanded for resentencing.

1. CRIMINAL LAW — EVIDENCE — TRACKING-DOG EVIDENCE.

Evidence regarding identification of a suspect by a tracking dog is admissible where a proper foundation is laid that shows: the handler was qualified to use the dog, the dog was trained and accurate in tracking humans, the dog was placed on the trail where circumstances indicated the alleged guilty party had been, and the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it; in addition, other corroborating evidence must be presented before identification on the basis of tracking-dog evidence is sufficient to support a guilty verdict.

2. SENTENCES — SENTENCING GUIDELINES — PROPORTIONALITY.

A sentence must be proportionate to the seriousness of the crime and the defendant's prior record; departure from the sentencing guidelines is permitted where there are special characteristics of the offense or the offender, and the court specifically explains the characteristics; a sentence within the guidelines range conceivably may violate the principle of proportionality.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Conrad Sindt,* Prosecuting Attorney, and *Ronald S. Pichlik,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*), for Jason Stone.

*Patrick K. Ehlmann,* for Marlon Byrd.

Before: NEFF, P.J., and GRIBBS and CAVANAGH, JJ.

PER CURIAM. Following a joint trial, with separate juries, defendants Stone and Byrd were convicted of armed robbery, MCL 750.529; MSA

28.797, and sentenced to 7½ to 15 years in prison. Defendants appeal as of right. We affirm the convictions, but remand for resentencing.

On August 9, 1989, at approximately 8:30 A.M., two young black men entered a branch of the City Bank & Trust Company and announced a holdup. One carried a sawed-off shotgun. They took money from two cashiers' drawers, locked the three employees in the vault, took the keys, and left. One of the employees saw them running down the street.

About an hour later, Michigan State Police Trooper Gary Lisle arrived with his tracking dog. They tracked a scent to a nearby wooded area where they found the defendants hiding in a ditch. They also found some clothes, the stolen money, a ring of keys, and a sawed-off shotgun nearby.

Several people testified that they saw two teen-age men in the area that morning. One witness testified that she saw defendant Byrd and another man in the area of the bank around 8:00 A.M. The bank employees were unable to identify defendants as the perpetrators because the robbers had worn clothing around their faces. Some of the clothing found on or near the defendants did not match the descriptions given by the employees. Stone's teacher testified that she overheard him deny and then admit that he had participated in the robbery.

Byrd and Stone testified that they played basketball that morning. After buying some pop at a store, they were walking down the street when they began to argue. Byrd chased Stone into the wooded area, where they found two jackets. Stone found a gun and some keys in one jacket. They played with the gun while they smoked some marijuana. When they heard the police, they hid in the ditch.

On appeal, Byrd argues that the court erred in

denying his motion for a mistrial after the prosecutor questioned a police officer about a statement by Stone.

The prosecutor asked the police officer if either defendant had made a statement. The police officer replied that Stone had. After some discussion, the court denied the motion and advised both juries that the question had been stricken and should be ignored.

The court did not abuse its discretion in denying the motion for a mistrial. *People v Gonzales,* 193 Mich App 263, 265; 483 NW2d 458 (1992). Because no statement was actually admitted in the trial, the right to cross-examination was not implicated. Byrd's jury was instructed to ignore the question and was aware that Stone's jury had not heard the statement. Byrd was not prejudiced.

Next, Byrd contends that the court erred in admitting the tracking-dog evidence because there was no other direct evidence of his guilt.

Tracking-dog evidence is admissible only after certain foundational requirements are met. In addition, there must be other corroborating evidence presented before identification based on tracking-dog evidence is sufficient to support a guilty verdict. *People v Laidlaw,* 169 Mich App 84, 93-94; 425 NW2d 738 (1988). Byrd does not dispute the foundational requirements. After review of the record, we conclude that there was sufficient corroborating evidence of Byrd's identification. He was seen in the area and was apprehended near jackets matching the description of those worn by the perpetrators and the gun used in the crime, as well as the money and keys taken from the bank. The court did not abuse its discretion.

Stone argues that he was denied the right to an impartial jury when Byrd was forced to try on one of the jackets in the presence of Stone's jury.

During the trial, the prosecutor was allowed to have both defendants stand before the juries and try on the jackets. One witness testified that they had the jackets switched. This demonstration did not lead to the positive identification of either defendant by the witnesses. In fact, both defendants testified that they had tried on the jackets when they found them in the woods.

This type of evidence is considered demonstrative and nontestimonial in nature. *People v Markley,* 99 Mich App 658, 661; 298 NW2d 615 (1980), rev'd on other grounds 413 Mich 852 (1982). Thus, it does not implicate Stone's right to cross-examination. The jury was free to find it irrelevant for identification purposes. The fact that Byrd also tried on the jackets in the presence of Stone's jury does not make the demonstration more or less prejudicial because Stone admitted that they were together at the time of the crime. Stone had an opportunity, during the demonstration, through cross-examination of the witness and during his own testimony, to refute the claim that the jackets were worn by either of the defendants. Stone was not denied a fair trial.

Next, Stone argues that he was denied equal protection by the court's refusal to approve funds to enable him to hire an independent psychologist to testify at the dispositional hearing. At that hearing, the prosecutor presented the testimony of a psychologist appointed by the juvenile court. The psychologist prepared a report for the juvenile court in anticipation of a discretionary waiver hearing with regard to another charge. The psychologist recommended in his report and in his testimony at the dispositional hearing that Stone be sentenced under the adult system.

The question whether an indigent defendant is entitled to access to a psychologist of his own

choosing in a posttrial proceeding has never been addressed by Michigan appellate courts. Most jurisdictions that have addressed the issue regarding an indigent's right of access to psychiatric assistance have done so in the context of preparation of a defense. Some have also addressed the assistance issue in the context of capital punishment.

The United States Supreme Court has held that three factors are relevant when determining whether the participation of a psychiatrist is important enough to the preparation of a defense to require a state to provide an indigent defendant with access to competent psychiatric assistance.

> The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. [*Ake v Oklahoma,* 470 US 68, 77; 105 S Ct 1087; 84 L Ed 2d 53 (1985).]

The Court found the private interest extremely high and the governmental interest in the accuracy of the criminal proceeding extremely compelling, while the state's interest in denying assistance was found to be not substantial. *Id.,* 78-79. It concluded that where the sanity of a defendant is a significant factor at trial, the defendant must have access to a competent psychiatrist. However,

> [t]his is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed,

and as in the case of the provision of counsel we leave to the States the decision on how to implement this right. [*Id.,* 83.]

Several states have held that *Ake* does not require the appointment of a psychiatrist of the defendant's own choosing who will reach conclusions that satisfy the defendant. The concern is that the defendant have access to a competent psychiatrist. The appointment, by the court, of an expert employed by the state, independent of the prosecution, has been held to be sufficient. See *Palmer v State,* 486 NE2d 477 (Ind, 1985); *State v Indvik,* 382 NW2d 623 (ND, 1986); *Dunn v State,* 291 Ark 131; 722 SW2d 595 (1987); *Beaver v Commonwealth,* 232 Va 521; 352 SE2d 342 (1987); *Ake v State,* 778 P2d 460 (Okla Crim App, 1989). See also *State v Williams,* 603 SW2d 562 (Mo, 1980), and anno: *Right of indigent defendant in state criminal case to assistance of psychiatrist or psychologist,* 85 ALR4th 19.

In this case, the private interest is less compelling because Stone's guilt had already been decided. His liberty was no longer at stake, rather, the concern was where he would spend his confinement. Assuming, arguendo, that Stone was entitled to access to a competent psychologist, he was afforded that right. The fact that the psychologist did not come to the conclusion he desired is not relevant. Stone asserts that because the psychologist was appointed by the juvenile court he cannot be considered unbiased. We disagree. Neither the juvenile court nor the circuit court has an interest in seeing that Stone stay within their system. In fact, this same psychologist recommended that Byrd be punished within the juvenile system. We decline to presume bias. Stone was not denied equal protection.

Both Byrd and Stone contend that the court erred in sentencing them as adults. Defendants were fifteen at the time they committed the offense.

The prosecutor has the burden of establishing by a preponderance of the evidence that the best interests of the juvenile and the public would be served by imposing a sentence against the juvenile as though the juvenile were an adult offender. MCR 6.931(E)(2). The court must consider several enumerated factors, giving each weight as appropriate to the circumstances. MCR 6.931(E)(3). Defendants contend that the court failed to consider whether they would more likely be rehabilitated by the adult or juvenile facilities.

After review of the record, we conclude that the court made adequate findings regarding the likelihood of rehabilitation under the adult and juvenile systems. As the court noted, both defendants had had previous contact with the juvenile system and had failed to respond to the rehabilitative programs offered to them. Moreover, the only juvenile program left would allow them to eventually be placed in the community on an unsupervised basis. The court did not err.

Last, defendants argue that their 7½-year minimum sentences are disproportionate. The guidelines for Byrd recommended a three- to eight-year minimum sentence. The guidelines for Stone recommended a two- to six-year minimum sentence. The court cited the defendants' prior records and the offense as reasons for the sentences.

Byrd also asserts that he was incorrectly assessed fifteen points for prior record variable 6, indicating a postconviction relationship existed at the time of the offense. Byrd was on juvenile probation at the time of the offense.

The instructions to PRV 6 indicate that a "rela-

tionship to the criminal justice system" applies to relationships determined by juvenile convictions or charges. The guidelines were properly scored.

A sentence must be proportionate to the seriousness of the crime and the defendant's prior record. A sentencing court abuses its discretion when it violates the principle of proportionality. *People v Milbourn,* 435 Mich 630, 635-636, 654; 461 NW2d 1 (1990). The sentencing guidelines are intended to assist the court in assessing the appropriate sentence and promote statewide consistency in sentencing. *People v Crook,* 162 Mich App 106, 109; 412 NW2d 661 (1987). Departures are permitted, but are suspect and subject to careful scrutiny on appeal. *Milbourn,* 656-657. When a court departs from the guidelines because of the special characteristics of the offense or the offender, it must specifically explain those characteristics. *People v Fisher,* 166 Mich App 699, 715; 420 NW2d 858 (1988). A deviation from the range may be based on factors already considered in the guidelines calculations, but such a deviation must be made only with caution. *Milbourn,* 660, n 27. A sentence within the guidelines range conceivably can violate the principle of proportionality. *Id.,* 661.

In Stone's case, the court did not articulate any special characteristics of the crime that prompted departure. In addition, Stone's prior record had already been factored in the guidelines. Although armed robbery is always a serious crime, as reflected in the guidelines recommendations, we find nothing in the record before us that makes this particular armed robbery more heinous than others, justifying a departure from the guidelines. Although the victims were scared, none was physically injured, nor did they appear to be harassed.

In Byrd's case, the court thought it was depart-

ing from the guidelines, even though the sentence was actually six months less than the maximum minimum sentence. Nevertheless, the court mentioned Stone's sentence and stated that the defendants should be treated the same.

Both defendants were young and had not been previously treated in the adult system. Rehabilitation was still possible. There were apparently no special circumstances of this crime that made it especially heinous. Under the circumstances, we conclude that the court abused its discretion in sentencing defendants to 7½-year minimum terms.

Defendants' convictions are affirmed. We remand for resentencing of both defendants.