PEOPLE v BELANGER

Docket No. 104037. Decided June 17, 1997. On application by the defendant on reconsideration for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the Court of Appeals and the circuit court, and remanded the case to the circuit court for a new trial.

Jerry F. Belanger was found guilty, but mentally ill, by a jury in the Macomb Circuit Court, Frederick D. Balkwill, J., of first-degree murder and possession of a firearm during the commission of a felony. The Court of Appeals, CORRIGAN, P.J., and WAHLS and SAAD, JJ., affirmed in an unpublished opinion per curiam (Docket No. 157952). The Supreme Court held the case in abeyance pending decision in *People v Mateo*, 453 Mich 203 (1996), and then denied leave to appeal 453 Mich 953 (1996). The defendant seeks reconsideration of his application for leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

The prosecutor's use of the defendant's request for counsel to establish the defendant's sanity violated due process guarantees. The error was not harmless. On the record, the prosecution did not prove beyond a reasonable doubt, nor can the Supreme Court determine, that there is no reasonable possibility that the challenged evidence might have contributed to the defendant's conviction.

Reversed and remanded.

*Lawrence S. Katz* for the defendant.

PER CURIAM. At the conclusion of a jury trial, the defendant was found guilty, but mentally ill, of first-degree murder and felony-firearm. Though it found two errors in the trial, and an instance in which a sequestration order was violated, the Court of Appeals affirmed on the ground that the errors were harmless. We reverse the judgments of the Court of Appeals and the circuit court, and remand this case

for a new trial. One of the errors is of constitutional magnitude, and was not harmless beyond a reasonable doubt.

I

The roots of this case lie in an adulterous relationship between the defendant and a woman whom he met at work. The Court of Appeals has summarized the tumultuous events that followed:

> Defendant testified that he met the decedent, Mary Jane Komajda, in 1987, and that they developed a sexual relationship in 1988 despite the fact that defendant was married. In spring 1989, he told Komajda that he wished to end their relationship. After Komajda told defendant's then-wife Terry about the relationship, Terry and defendant became estranged and eventually divorced. Although defendant and Komajda resumed their sexual relationship at the end of 1989, defendant broke it off again in February, 1990.

> On April 23, 1991, Komajda called Terry and threatened her life. In response, defendant called Komajda the next day and threatened to kill Komajda and her children if she did not leave him and Terry alone. On April 25, 1991, while on a break from his late evening shift at the Ford Motor Chesterfield Trim Plant, defendant spoke to Terry and learned that Komajda had again threatened Terry's life. Defendant retrieved a .357 Magnum from his house, but left the gun in his car before walking back into the plant.

> After defendant reentered the plant, Komajda told him, "Well, I'm going to get her out of the picture once and for all." Defendant retorted, "say good-bye to your kids," and retrieved the gun from his car. Defendant went back inside the plant, saw Komajda moving toward the union office, followed her into the back office, and shot her until his gun was empty. Defendant pleaded insanity at trial.

> *　*　*

> At trial, defendant testified to many harassing and threatening acts by Komajda. After defendant first broke off their

relationship, Komajda followed him home once or twice a week and asked that they continue their relationship. In September, 1989, defendant assaulted Komajda. This came after he learned that Komajda had followed Terry home, threatened Terry with the car Komajda was driving, and shouted obscenities and threats at Terry.

After defendant again broke off the relationship in February, 1990, Komajda began to visit him uninvited, and would not leave despite his requests. Defendant made complaints to the police, but she continued to harass him. His car was twice vandalized with a key while parked at work. In Christmas, 1990, someone broke into his home, and stole a handgun, a VCR, personal files, and a box of personal possessions which included his wedding ring. Komajda taunted defendant at work by displaying a ring around a chain which defendant believed was his wedding ring. In February, 1991, she followed him into a tavern and took his car keys. In March, 1991, she followed him into a church service. After the service, he found that someone had poured syrup into his gas tank. Also in March, 1991, Komajda threatened defendant's life.

Defendant moved in limine to offer testimonial evidence from: 1) Elizabeth Martin that Komajda threatened defendant's attorney during defendant's divorce proceeding; 2) Officer Ameriguidan of the Mount Clemens Police Department that Komajda attempted to run over a police officer after defendant called the police about Komajda's refusal to leave his home; 3) Terry that Komajda threatened her life because Komajda feared a possible reconciliation between defendant and Terry; and 4) Marlene Thompson that Komajda admitted that she damaged defendant's car with her keys, put sugar in his gas tank, broke into his home, followed him constantly, engaged in telephone harassment, and threatened to kill Terry. The trial court denied defendant's motion.[1]

---

[1] Unpublished opinion per curiam, issued June 6, 1995, reh den July 28, 1995 (Docket No. 157952), slip op at 1-2.

The defendant was charged with open murder and possession of a firearm during the commission of that felony. MCL 750.316, 750.227b; MSA 28.548, 28.424(2).

As indicated, the defendant was permitted to testify at trial concerning various acts of intimidation by Ms. Komajda, though the circuit court sharply limited his ability to produce corroborating evidence of her misconduct.[2] Despite the fact that it was a judicial ruling that precluded the introduction of corroborating evidence, the assistant prosecutor criticized the defendant during closing argument for failing to produce proof that these events actually occurred.

Other controversies arose during the trial. One dispute concerned the prosecution's violation of an order sequestering witnesses. Another concerned the prosecution's elicitation of testimony that the defendant, after receiving *Miranda*[3] warnings, requested counsel.

On the latter subject, the court ruled that a police officer would not be allowed to testify that the defendant had requested an attorney and stopped questioning. However, the court did permit the defendant to be asked whether, after the reading of rights, he had stopped the questioning and requested a lawyer. The assistant prosecutor's closing argument included references to the request for counsel.

The jury rejected the defense of insanity, and instead found the defendant guilty, but mentally ill, of

---

[2] The psychiatric and psychological experts at trial also discussed Ms. Komajda's behavior. They had been given access to police reports and some other background materials, but the defendant's own accounts were their primary source.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

first-degree murder and felony-firearm. After denying the defendant's motion for new trial, the circuit court imposed the mandatory sentences of life and two years.

The Court of Appeals affirmed. In doing so, it agreed with the defendant that the circuit court had erred in limiting the evidence concerning Ms. Komajda's behavior, that the prosecutor had violated the circuit court's sequestration order, and that the prosecutor inappropriately elicited evidence concerning the defendant's request for an attorney. However, the Court found no abuse of discretion in the handling of the sequestration problem, and found the evidentiary errors to be harmless.[4]

The defendant filed in this Court an application for leave to appeal, which we held in abeyance[5] pending our decision in *People v Mateo*, 453 Mich 203; 551 NW2d 891 (1996).   After *Mateo* was decided in July 1996, we denied leave to appeal. 453 Mich 953 (1996).

The defendant has now moved for reconsideration.

II

In recent years, this Court has attempted on several occasions to clarify the principles that determine whether judicial error warrants reversal. In this regard, we have observed that "[r]ules of automatic reversal are disfavored, for a host of obvious reasons." *People v Mosko*, 441 Mich 496, 502; 495 NW2d 534 (1992).

In *People v Grant*, 445 Mich 535, 553; 520 NW2d 123 (1994),  we held that "a plain, *unpreserved* error may

---

[4] The Court of Appeals also rejected several other claims made by the defendant on appeal.

[5] Unreported order entered May 31, 1996 (Docket No. 104037).

not be considered by an appellate court for the first time on appeal unless the error could have been decisive of the outcome or unless it falls under the category of cases, yet to be clearly defined, where prejudice is presumed or reversal is automatic."

We explained in *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994), that constitutional error automatically requires reversal if it is a "structural defect in the constitution of the trial mechanism, which defies analysis by harmless-error standards."[6] We then turned to the rule regarding constitutional error that is not such a structural defect:

> At the other end of the spectrum, however, are trial errors that "occur[] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." [*Arizona v*] *Fulminante*, [499 US 279, 307-308; 111 S Ct 1246; 113 L Ed 2d 302 (1991)]. This requires the beneficiary of the error to prove, and the court to determine, beyond a reasonable doubt that there is no " 'reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman* [*v California*, 386 US 18, 23; 87 S Ct 824; 17 L Ed 2d 705 (1967)]. [446 Mich 405-406.]

Finally, our recent *Mateo* opinion indicates that preserved nonconstitutional error requires reversal only if "prejudicial," 453 Mich 215, reserving the question of the proper standard for making such a determination, 453 Mich 220.

---

[6] Brackets and internal quotations are omitted.

III

In the present case, the Court of Appeals found at least two instances of judicial error, but concluded that they were harmless. One is an evidentiary question, concerning the extent to which the defendant would be allowed to demonstrate that Ms. Komajda's misconduct was real, and not just self-serving fiction. While a defendant's right to present an effective defense can have a constitutional dimension,[7] there is no need in the present case to reach such a question.

Instead, the focus can remain on the second error identified by the Court of Appeals:

> Here, after defendant was read his *Miranda* warnings, he answered a few questions, and then asked for an attorney. At trial, the prosecutor asked defendant whether he stopped talking to police at some point after his arrest, and requested an attorney. In addition, the prosecutor elicited Officer Henry Deblow's testimony that defendant requested an attorney after being read his *Miranda* rights.
>
> The prosecution argues that it was seeking evidence of defendant's request for counsel not as an admission of guilt, but to rebut defendant's insanity defense. However, the United States Supreme Court has held that it is fundamentally unfair to assure a suspect that his silence will not be used against him and then to use that silence to impeach him at trial. *Wainwright v Greenfield*, 474 US 284, 293; 106 S Ct 634; 88 L Ed 2d 623 (1986). The Court held that a prosecutor's use of a defendant's request for counsel to establish that defendant's sanity violates the constitutional protection of due process. *Id.* at 290-292. Accordingly, this evidence was inadmissible.
>
> In addition, the prosecutor compounded the error by using the evidence in closing argument as direct evidence of defendant's guilt. See *People v Vanover*, 200 Mich App

---

[7] *People v Stanaway*, 446 Mich 643, 694, n 53; 521 NW2d 557 (1994).

498, 503; 505 NW2d 21 (1993). The prosecutor argued that defendant demanded a lawyer, and that, "[w]hen somebody asks for a lawyer they know they're in trouble." The *Fifth* Amendment and Const 1963, art 1, § 17 provide that no person shall be compelled to be a witness against himself or herself in a criminal trial. *People v Schollaert,* 194 Mich App 158, 164; 486 NW2d 312 (1992). Here, defendant testified to his conversation with the police before he invoked his right to counsel. Because defendant did not speak to the police again after his request, the prosecutor effectively commented on defendant's exercise of his constitutional right to remain silent. [Slip op at 4-5.]

Counsel preserved this error by timely objection during trial, and the matter was also addressed in the defendant's motion for new trial.

As we explained in *Anderson,* such constitutional error requires reversal unless it is harmless beyond a reasonable doubt. In this instance, we are unable to conclude that the error was harmless.

This was a challenging case for the jury, in which it was asked to determine the defendant's state of mind during a narrow period of time. The jury had a good deal of evidence regarding the circumstances (though, as indicated earlier, not the full body of evidence it should have received), and it had several expert opinions to weigh. This was a closely contested case, in which the defense theory was not frivolous. The insertion of constitutional error at the key decisional fulcrum of the case—the defendant's state of mind in the crucial moments—leaves us unable to be sufficiently certain that the error was harmless.

On this record, the prosecution cannot prove beyond a reasonable doubt, nor can this Court so determine, that there is no reasonable possibility that

the challenged evidence might have contributed to the conviction.

Accordingly, we grant the defendant's motion for reconsideration. On reconsideration, we reverse the judgments of the Court of Appeals and the circuit court, and remand this case to the circuit court for new trial. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, RILEY, WEAVER, and KELLY, JJ., concurred.