PEOPLE v CREAR

Docket No. 209195. Submitted May 2, 2000, at Detroit. Decided August 15, 2000, at 9:05 A.M Leave to appeal sought.

George Crear, III, was convicted by a jury in the Genesee Circuit Court of three counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. The court, Robert M. Ransom, J., sentenced the defendant to concurrent prison terms of life, forty to seventy-five years, and twenty-five to forty years for the first-degree criminal sexual conduct convictions and eighteen to fifteen years and ten to fifteen years for the second-degree criminal sexual conduct convictions. The defendant appealed.

The Court of Appeals held:

1. The filing of the charges against the defendant was timely under the six-year period of limitation of MCL 767.24(1); MSA 28.964(1), as tolled for the time the defendant did not usually and publicly reside within Michigan. The incidents underlying the charges began in 1982 and ended in 1984 and the defendant changed his residence from Michigan to Florida in 1987, where he stayed until charged in 1995. The limitation period did not expire because it was tolled from the time the defendant changed his residency. The tolling provision applies to the defendant even though he was living openly in Florida, it was easy for the authorities to locate him, he did not leave Michigan to avoid prosecution, and his absence did not prevent the prosecution from going forward with the case.

2. The tolling provision in MCL 767.24(1); MSA 28.964(1) does not unreasonably infringe on a defendant's constitutional right to travel because it applies only where residency is established in another state.

3. The delay in bringing charges against the defendant did not deprive the defendant of due process. The defendant did not establish actual and substantial prejudice to his right to a fair trial, nor did the defendant show that the prosecution intentionally delayed bringing charges in order to gain a tactical advantage.

4. The trial court did not abuse its discretion in denying the defendant's motion for a new trial on the asserted ground that a

juror committed misconduct by failing to disclose at voir dire that she had been in a college class at which the assistant prosecutor trying the defendant spoke about the defendant's case. The record does not indicate that the juror was excusable for cause or that the defendant was actually prejudiced by the juror's presence on the jury.

5. The trial court erred in refusing to strike the testimony of a witness about similar acts by the defendant after the witness refused to sign a release for her counseling records. However, the error was harmless in view of the defendant's failure to show that he was entitled to review such records or to have them produced for an in camera review by the trial court. The defendant needed to, but did not, make a preliminary showing that he had a good-faith belief, grounded on some demonstrable fact, that there was a reasonable probability that the records were likely to contain material information necessary to the defense.

6. The trial court did not abuse its discretion in admitting the similar-acts testimony of several witnesses. There was sufficient similarity between the witnesses' accounts to establish a pattern, plan, or scheme by the defendant, the testimony was offered for a proper purpose, the testimony was relevant to an issue of consequence at trial, and the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice.

7. The defendant's sentences do not violate the principle of proportionality. The trial court provided sufficient and valid reasons justifying its upward departure from the sentencing guidelines with respect to two of the sentences for first-degree criminal sexual conduct. The defendant abused his position as a middle school and high school band teacher to sexually abuse vulnerable teenage students, and the victim in this case experienced extreme emotional harm.

Affirmed.

1. LIMITATION OF ACTIONS — CRIMINAL LAW — NONRESIDENTS.

The limitation period within which an indictment for one of certain crimes must be filed no later than six years after the commission of the crime is tolled for any period during which the defendant does not usually and publicly reside within Michigan; the tolling provision applies even where the defendant lives openly in the place where the new residency is established, it is easy for the authorities to locate the defendant, the defendant does not leave Michigan to avoid prosecution, and the defendant's absence does not prevent the prosecution from going forward with the case (MCL 767.24[1]; MSA 28.964[1]).

2. CONSTITUTIONAL LAW — DUE PROCESS — PREARREST DELAY.

A criminal charge may be dismissed because of prearrest delay only where there is actual and substantial prejudice to the defendant's right to a fair trial and an intent by the prosecution to gain a tactical advantage; to be substantial, the prejudice to the defendant must meaningfully impair the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings will likely be affected.

3. CRIMINAL LAW — NEW TRIAL — JUROR MISCONDUCT.

A defendant seeking a new trial on the basis of juror misconduct must establish that the defendant was actually prejudiced by the presence of the juror in question or that the juror was properly excusable for cause.

4. EVIDENCE — SIMILAR ACTS — ADMISSIBILITY.

Evidence of similar acts may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant to an issue of consequence at trial, and its probative value is not substantially outweighed by the danger of unfair prejudice.

5. SENTENCES — SENTENCING GUIDELINES — DEPARTURES.

A court that departs from the sentencing guidelines because of the special characteristics of the offense or the offender must specifically explain those characteristics.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Donald A. Kuebler*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for the defendant on appeal.

Before: McDONALD, P.J., and GAGE and TALBOT, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of three counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b), and two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(b); MSA 28.788(3)(1)(b). For the first-degree criminal sexual conduct convictions, defendant was sentenced to

prison terms of life, forty to seventy-five years, and twenty-five to forty years. For the second-degree criminal sexual conduct convictions, defendant was sentenced to prison terms of eight to fifteen years and ten to fifteen years. All sentences are to be served concurrently. Defendant appeals as of right. We affirm.

Defendant is a former band instructor at Whittier Middle School and Central High School in Flint. He was convicted for his sexual abuse of the victim that occurred over two school years, 1982-83 and 1983-84, beginning when the victim was in seventh grade. When the victim began seventh grade she was twelve years old, but she turned thirteen years old in November 1982.

Within the first few months of the 1982-83 school year, defendant initiated a friendship with the victim, which resulted in the victim confiding in defendant regarding problems at home and relying on defendant for support. However, the relationship changed around Thanksgiving of 1982. At that point, instead of giving her friendly advice, defendant began making comments that made the victim uncomfortable such as "I see you looking at me." In February 1983, following a band concert after school hours and while waiting for the victim's mother to pick her up, defendant grabbed the victim's hand and placed it on top of his clothes over his penis. From that point, defendant escalated his sexual acts with the victim, including making the victim fondle his unclothed penis and making the victim perform fellatio on him and swallow his ejaculate. The victim estimated that defendant had her fondle him and perform oral sex on him at least ten to fifteen times in the last few months of the

school year when she was in seventh grade. These incidents took place in a room known as the "hot box" across the hall from the band room.

When the victim returned to school the following year for eighth grade, defendant was no longer the band instructor at Whittier, but taught at Central High School, which was located next to Whittier. Defendant's wife, Cherlyn Crear, was the band instructor at Whittier that year, but because of illness, Cherlyn often was absent or could not conduct her class. Accordingly, defendant often taught Cherlyn's class at Whittier and still had access to the "hot box." In addition, defendant arranged for the victim to be a teacher's aide to Cherlyn, which involved further contact between the victim and defendant at Central and at Whittier. The victim testified that when the school year began, defendant resumed the sexual abuse, making the victim fondle him and perform oral sex on him in the "hot box" and in the band room at Central. Eventually, defendant's sexual abuse of the victim progressed to digital penetration of her vagina.

Defendant continued to sexually abuse the victim until March 1984, when she was still in eighth grade. Following an incident where defendant slapped the victim across the face in front of some other students, the victim decided to report the slap and the sexual abuse to the school's principal. The school took the victim's statement, and the police were contacted. However, no charges were brought against defendant at that time. Shortly thereafter, the victim was required to transfer to another school. Her mother decided not to pursue the matter criminally because of the way the school handled it and the harm caused to the victim.

Later, in 1987, two women who had been students of defendant came forward and alleged to the Flint School District that they had been sexually abused by defendant while they were students in the late 1970s. In part because of these allegations, defendant left Michigan in 1987 and took a job in Miami, Florida, as a band instructor at Palmetto High School. Defendant also explained that his move was motivated in part by the death of his wife Cherlyn from cancer in 1985. When defendant relocated to Florida, Liz Crawford, who had also been a student of his in the late 1970s moved with him. He and Liz were married in 1988.

In 1994 or 1995, criminal charges were filed against defendant in Florida after former female students alleged that defendant engaged in sexual conduct with them while they were high school students in his band classes.[1] After seeing media coverage of the Florida criminal proceedings, the victim decided in 1995 to again come forward and the instant criminal proceedings were initiated against defendant.

Defendant first argues that his prosecution for the charged offenses, which occurred in 1983, was time-barred under the applicable statute of limitations, MCL 767.24(1); MSA 28.964(1), and that the trial court erred in applying the nonresident tolling provision of the statute to conclude that the six-year period of limitation was tolled during the time that he resided in Florida. Defendant, who moved to Florida in 1987, argues that the tolling provision should not apply because he was residing openly and publicly in Florida and could have been extradited back at any time

---

[1] Defendant was acquitted of the charges in Florida, but details of the Florida proceedings were not presented to the jury in this case.

to defend against any charges. We disagree with defendant's interpretation of the tolling provision in MCL 767.24(1); MSA 28.964(1).

The statute provides, in relevant part:

(1) An indictment for the crime of murder may be found at any period after the death of the person alleged to have been murdered. Indictments for the crimes of kidnapping, extortion, assault with intent to commit murder, and conspiracy to commit murder shall be found and filed within 10 years after the commission of the offense. Except as otherwise provided in subsection (2), all other indictments shall be found and filed within 6 years after the commission of the offense. *However, any period during which the party charged did not usually and publicly reside within this state shall not be considered part of the time within which the respective indictments shall be found and filed.* [MCL 767.24(1); MSA 28.964(1) (emphasis added).]

In *People v McIntire*, 232 Mich App 71; 591 NW2d 231 (1998), the defendant made a similar argument regarding the nonresident tolling provision of MCL 767.24(1); MSA 28.964(1). There, this Court held that the nonresident tolling provision of MCL 767.24(1); MSA 28.964(1) is plain and unambiguous. *Id.* at 98. In *McIntire*, this Court relied on the well-established rule that the Legislature is presumed to have intended the meaning it plainly expressed, *People v Gould*, 225 Mich App 79, 83; 570 NW2d 140 (1997). This Court concluded that the statute must be applied as written and that it did not prevent the limitation period from being tolled even though the defendant was living openly in South Carolina, it was easy for the authorities to locate him, he did not leave this state to avoid prosecution, and the defendant's absence did not prevent prosecutors from going forward with the case. *McIntire, supra* at 98. This Court specifically con-

cluded that applying the tolling provision under those facts was what the Legislature intended and rejected the views of a minority of other states that limited application of a tolling provision only where a suspect had absconded or was not amenable to process. *Id.* at 99-100. This Court also pointed out that Michigan's tolling provision applies only in those situations where a suspect is no longer a resident of this state, not just where the suspect is absent from this state. *Id.* at 100, n 16.

We are cognizant that this Court's decision in *McIntire* was reversed by our Supreme Court, *People v McIntire*, 461 Mich 147; 599 NW2d 102 (1999), which reversed on other grounds and did not address the statute of limitations question. As a result, this Court's decision is not binding precedent under MCR 7.215(H)(1). See *Taylor v Kurapati*, 236 Mich App 315, 344-346, n 42; 600 NW2d 670 (1999). Nevertheless, we find that this Court's analysis of the statute of limitations question in *McIntire* is both persuasive and applicable to this case. Thus, because there is no dispute that defendant had resided in Florida since 1987, we conclude that the trial court did not err in holding that the period of limitation was tolled after defendant moved to Florida in 1987 and that, consequently, the charges in this case were timely filed.

Defendant also challenges the constitutionality of the tolling provision in MCL 767.24(1); MSA 28.964(1), arguing that it impermissibly infringes on his constitutional right to travel. We find no merit to this argument. The provision applies only where residency is established in another state and, therefore, is tailored so that it does not unreasonably infringe upon a defendant's right to travel. Further, we believe that

the tolling provision advances a compelling state interest in permitting later prosecutions in cases where a defendant no longer resides in the jurisdiction. Therefore, the tolling provision is not unconstitutional. *Dunn v Blumstein*, 405 US 330, 338-339, 343; 92 S Ct 995; 31 L Ed 2d 274 (1972).

Defendant alternatively argues that the delay in bringing the charges against him deprived him of due process. Although defendant did not raise this issue in the trial court, appellate review is not precluded where a serious due process violation is alleged. *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999), lv pending, citing *People v Gilliam*, 108 Mich App 695, 698; 310 NW2d 843 (1981). A challenge to prearrest delay implicates constitutional due process rights. *Cain, supra* at 108.

Before dismissal may be granted because of prearrest delay there must be actual and substantial prejudice to the defendant's right to a fair trial and an intent by the prosecution to gain a tactical advantage. *People v Adams*, 232 Mich App 128, 134; 591 NW2d 44 (1998); *People v White*, 208 Mich App 126, 134; 527 NW2d 34 (1994). To be substantial, the prejudice to the defendant must meaningfully impair his ability to defend against the charges against him in such a manner that the outcome of the proceedings will likely be affected. *Adams, supra* at 134-135. Proof of "actual and substantial" prejudice requires more than just generalized allegations. *Id.* Here, defendant does not identify any specific prejudice other than alleging that witnesses had difficulty recalling certain details. Alleged imperfections of a witness' memory are generally insufficient to establish actual and substantial prejudice. *Id.* Furthermore, there is no evidence that

the prosecution intentionally delayed bringing these charges in order to gain a tactical advantage. Thus, defendant has not shown that a due process violation occurred.

Next, defendant argues that he is entitled to a new trial because a juror failed to reveal during voir dire that, approximately two weeks before trial, she was present when the assistant prosecutor spoke to her college class and mentioned this case during his talk. Defendant raised this issue in a motion for a new trial. A lower court may grant a new trial on any ground that would support appellate reversal of the defendant's conviction or if the court believes that the verdict has resulted in a miscarriage of justice. MCR 6.431(B). Here, the trial court denied defendant's motion for a new trial after conducting an evidentiary hearing. While we review the trial court's decision denying defendant's motion for a new trial for an abuse of discretion, *People v Leonard*, 224 Mich App 569, 580; 569 NW2d 663 (1997), we review the trial court's factual findings for clear error. MCR 2.613(C).

To be entitled to a new trial on the basis of juror misconduct, defendant must "establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause." *People v Daoust*, 228 Mich App 1, 9; 577 NW2d 179 (1998). The juror in question testified at a posttrial evidentiary hearing that she arrived late for the class at which the assistant prosecutor spoke, that she was not paying particular attention to the talk because she was preoccupied with studying for an examination later that evening, and that, while she did recall the prosecutor mentioning defendant's case, she did not recall him discuss anything about it. The

juror explained that, when asked during jury voir dire whether she was acquainted with the prosecuting attorney, she did not respond because, although she recognized the prosecutor from her class, she did not consider him an acquaintance. She also assured the court, when asked during voir dire if she could be fair and impartial and decide the case solely on the evidence, that she gave a truthful response indicating that she could.

The trial court found that the juror had responded truthfully to the questions asked of her during voir dire. In light of the factual record developed on this issue, that finding is not clearly erroneous. Further, the record does not demonstrate that the juror was excusable for cause or that defendant was actually prejudiced by the juror's presence on the jury. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Defendant next argues that the trial court erred in refusing to strike the testimony of a similar-acts witness after she refused to sign a release for her counseling records. We agree with defendant that the trial court erred in its handling of this matter. Because the witness held an absolute privilege regarding the release of her counseling records, those records could not be produced absent her consent. *People v Stanaway*, 446 Mich 643, 675-676, 683-684; 521 NW2d 557 (1994). Thus, the trial court erred in concluding that the counseling records could have been obtained by defendant with a subpoena. In *Stanaway*, the Supreme Court held that the appropriate remedy when a witness refuses to consent to the release of counseling records is to bar that witness' testimony. *Id.* at 684.

Nevertheless, before a defendant is entitled to review such records, or even have them produced for an in camera review by the trial court, he must make a preliminary showing that he has "a good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *Stanaway, supra* at 677. In this case, defendant offered a police statement in support of his request for the records. After reviewing that statement, we are satisfied that defendant has not demonstrated a good-faith belief that the records contained information that the witness suffered from repressed memories about this incident and that those memories were triggered only by improper therapy techniques. Thus, defendant failed to offer sufficient factual support to justify the trial court granting him the right to an in camera review of the records. *Id.* at 681-682. Accordingly, any error committed by the trial court in relation to the production of the records was harmless beyond a reasonable doubt. *Id.* at 684, n 49; *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994); *People v Belanger*, 454 Mich 571, 576; 563 NW2d 665 (1997).

Next, defendant argues that the trial court abused its discretion in admitting the similar-acts testimony of several of his former band students. We disagree. We review the trial court's decision to admit evidence for an abuse of discretion. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996). There was sufficient similarity between the witnesses' accounts to establish a pattern, plan, or scheme by defendant. MRE 404(b). We conclude that the testimony was offered for a proper purpose under MRE 404(b), that

it was relevant to an issue of consequence at trial, and that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Hence, the trial court did not abuse its discretion in admitting the testimony.

Finally, defendant argues that his sentences violate the principle of proportionality, which requires this Court to determine whether defendant's sentences are proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Two of defendant's first-degree criminal sexual conduct sentences represent departures from the sentencing guidelines recommended minimum sentence range. While departures from the guidelines are permitted, they are subject to careful scrutiny on appeal. *Milbourn, supra* at 656-657. A departure from the recommended range indicates a possibility that a sentence may be disproportionate, although the primary consideration must be whether the sentence reflects the seriousness of the matter. *People v Houston*, 448 Mich 312, 320; 532 NW2d 508 (1995). When a court departs from the guidelines because of the special characteristics of the offense or the offender, it must specifically explain those characteristics. *People v Stone*, 195 Mich App 600, 608; 491 NW2d 628 (1992). Although a court may depart from the guidelines range on the basis of factors already considered in the guidelines calculations, such deviations must be made with caution. *People v Rockey*, 237 Mich App 74, 79; 601 NW2d 887 (1999).

We conclude that the trial court provided sufficient and valid reasons justifying its departure from the sentencing guidelines recommendation. Defendant abused his position as a successful and respected teacher to sexually abuse numerous vulnerable teenage students over a course of years. The victim in this case has experienced extreme emotional harm of longstanding duration because of defendant's conduct. Defendant's sentences do not violate the principle of proportionality.

Affirmed.