# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 25, 2008

135811

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
     Plaintiff-Appellee,

v

CHARLES WILLIAM MERCER, JR.,
     Defendant-Appellant.

SC: 135811
COA: 281006
Ingham CC: 07-000118-FC

_____/

On May 7, 2008, the Court heard oral argument on the application for leave to appeal the December 18, 2007 order of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.302(G)(1). In lieu of granting leave to appeal, we REMAND this case to the Ingham Circuit Court to rule on defendant's motion to quash the bindover. We DIRECT that court to issue its ruling within 28 days of the date of this order. We further ORDER that court to file with the Clerk of the Supreme Court a transcript of the hearing and related documents within 28 days of its ruling.

"This Court will not unnecessarily decide constitutional issues, *People v Riley*, 465 Mich 442, 447; 636 NW2d 514 (2001), and it is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds. *MacLean v Michigan State Bd of Control for Vocational Ed*, 294 Mich 45, 50; 292 NW 662 (1940)." *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734 (2003). We decline to reach the constitutional prearrest delay issue before the propriety of the bindover decision is resolved.

We retain jurisdiction.

CAVANAGH, J., dissents and states as follows:

I dissent from the order remanding to the Ingham Circuit Court to rule on defendant's motion to quash the bindover. While I believe the circuit court might well

have dismissed on the basis of defendant's motion to quash the bindover, as all expert medical opinion concerning cause of death that supported the prosecution's theory had been stricken at the preliminary exam, the circuit court did not address this motion. Instead, it granted defendant's motion to dismiss for prearrest delay, a ruling that is now presented for our review. I would address the jurisprudentially significant issue of whether due process may require dismissal of a prosecution where there is actual and substantial prejudice, even if there is no evidence that the prosecutor intentionally delayed bringing charges to gain a tactical advantage. The length of the delay and potential for prejudice in this case is tremendous. By failing to resolve this issue, this Court will potentially subject defendant to an unfair trial. Even if the circuit court grants defendant's motion to quash the bindover on remand, defendant could be subjected to another preliminary examination and potential trial, if the prosecutor refiles this charge. Further, by evading the opportunity to resolve the proper standard applicable to similar prearrest delay cases, this Court potentially subjects many more defendants in this state to stale, unfair prosecutions.

This case concerns the prosecution of defendant Charles Mercer for the murder of his wife, Sally Mercer. Sally Mercer died in 1968; defendant was not charged with open murder until 2006. There was an autopsy and police investigation immediately following Sally Mercer's death in 1968. The autopsy report noted that some of Sally Mercer's blood vessels exhibited a "surrounding collar of lymphocytes" and indicated that the cause of her death was bulbar polio. Toxicological analysis on Sally Mercer's blood and stomach-content samples detected slightly high levels of aspirin, but no other drugs. The toxicological analysis could have detected propoxyphene in the blood if it had been present in sufficient amount, but not in a very small amount.[1]

The Ingham County Prosecutor at the time disagreed with the cause of Sally Mercer's death indicated by the autopsy report. On the basis of direct and circumstantial information available to him, the prosecutor believed Sally Mercer's death was a homicide and considered defendant the suspect. However, no criminal prosecution was pursued at the time; the prosecutor indicated that he did not believe he had sufficient evidence to seek criminal proceedings. In 1970, the samples of Sally Mercer's blood and stomach contents were returned to the Ingham County Sheriff's Department to be discarded.

The case lay dormant until 1995, when a cold-case team began reinvestigating Sally Mercer's death. Her body was exhumed in 2003, and a second autopsy was performed. Samples of her tissue were tested by a toxicology laboratory. The tests showed that lethal levels of propoxyphene were present in her tissue. The testing of her hair indicated that she had been using propoxyphene regularly.

---

[1] Propoxyphene is a component of Darvon Compound-65, a readily available analgesic in the 1960's.

In June 2006, defendant was charged with open murder. The bill of particulars specifically accused defendant of committing first-degree murder by injecting Sally Mercer with lethal doses of propoxyphene. At the lengthy preliminary examination, several expert witnesses testified for the prosecution regarding the levels of propoxyphene found in Sally Mercer's tissues. The district court admitted the experts' testimony for the most part, but excluded the experts' conclusions that acute propoxyphene intoxication was the cause of Sally Mercer's death pursuant to *Daubert v Merrell Dow Pharmaceuticals, Inc,* 509 US 579 (1993). The district court found that there was probable cause to believe that defendant committed the offense of murder, despite having "buckets of reservations," and bound defendant over for trial.

Defendant filed a motion to dismiss because of prearrest delay. The circuit court granted defendant's motion to dismiss, applying the test used for speedy-trial violations. The Court of Appeals peremptorily reversed in an order issued December 18, 2007. The panel indicated that according to *United States v Marion*, 404 US 307 (1971), and *People v Crear*, 242 Mich App 158 (2000), dismissal may not be granted for prearrest delay unless there has been intent to delay by the prosecution to gain a tactical advantage. Defendant appealed, and this Court ordered oral argument on the application. 480 Mich 1148 (2008). Now, a majority of this Court has decided to remand. I respectfully dissent. I would reverse the Court of Appeals and reinstate the circuit court's dismissal.

The Court of Appeals erred in concluding that dismissal may only be granted for prearrest delay if there is evidence that the prosecutor intentionally delayed arrest to gain a tactical advantage. In *Marion*, the United States Supreme Court addressed the claim that pre-indictment delay violated two defendants' Sixth Amendment speedy-trial rights and due-process rights. The Court rejected the speedy-trial claim, concluding that the Sixth Amendment speedy-trial protection does not apply until a person becomes an "accused"—in other words, when a person has been indicted. *Id*. at 313. The Court also rejected the due-process claim as premature, as the defendants asserted only that they faced the possibility of prejudice at trial, not that actual prejudice had occurred. *Id*. at 325-326. Although the Court dismissed the due-process claims because they were premature, it suggested that due process might require dismissal of charges when actual prejudice occurs:

> Since [the defendants] rely only on potential prejudice and the passage of time between the alleged crime and the indictment, . . . we perhaps need go no further to dispose of this case . . . . Nevertheless, since a criminal trial is the likely consequence of our judgment and since [the defendants] may claim actual prejudice to their defense, it is appropriate to note here that the statute of limitations does not fully define the [defendants'] rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth

Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [defendants'] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. . . . However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. [*Id*. at 323-324.]

*Marion* establishes that a defendant must demonstrate actual prejudice, not merely potential prejudice, to challenge prearrest delay as a violation of due process. However, since the *Marion* defendants only alleged potential prejudice, the Court's discussion of a successful due-process challenge was merely advisory. Thus, the Court's reference to intentional delay caused by the prosecution was dicta. Moreover, the statement that prejudice *and* intentional delay would require dismissal was merely a recitation of the *government's* concession, and did not necessarily annunciate the Court's position. Accordingly, the Court of Appeals erred in relying on *Marion* for the proposition that intentional delay by the prosecution is necessary to a successful due-process challenge on the basis of prearrest delay.

The Court squarely addressed the issue of determining whether a prearrest delay violates due process in *United States v Lovasco*, 431 US 783 (1977), in which a defendant alleged that actual prejudice had resulted from the prosecutor's 18-month delay for further investigation. The Court noted that "proof of actual prejudice makes a due process claim concrete and ripe for adjudication," not automatically valid. *Lovasco*, *supra* at 789. Because proof of prejudice is "a necessary but not sufficient element of a due process claim, . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id*. at 790. The Court articulated the inquiry as "whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Id*. (citations omitted). The Court concluded that "prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty . . . ." *Id*. at 790-791. The Court explained at length why no interests would be served by compelling prosecutors to initiate prosecutions as soon as legally possible. In the Court's opinion, "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,'" because "investigative delay is not so one-sided." *Id*. at 795 (citations omitted). Therefore, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id*. at 796. Acknowledging that circumstances in which delay would require dismissal cannot be determined abstractly, the Court left to the lower courts "the task of applying the settled principles of due process that we have discussed to the particular

circumstances of individual cases." *Id*. at 797. It concluded that in the case at hand, the indictment should not have been dismissed. *Id*.

The United States Supreme Court has not elaborated on the applicable standard for determining due-process violations in prearrest delay cases since *Lovasco*. There is a split of authority on the matter among federal circuit courts and state courts, including our own Court of Appeals. Some panels contend that there can be no due-process violation unless the delay was intentionally caused by the prosecution to gain a tactical advantage. See *People v White*, 208 Mich App 126 (1994), and *Crear*, *supra*. Other lines of authority do not require evidence of intentional delay, but, rather, consider whether the reasons for the delay justify the resulting prejudice. See *People v Bisard*, 114 Mich App 784 (1982), and *People v Adams*, 232 Mich App 128 (1998).

I believe that constitutional due process does not require a showing that the prosecution's delay was an intentional device to gain a tactical advantage. Rather, the intent of the prosecution is only a factor for the court's analysis. There was no evidence or allegations of intentional delay in *Lovasco*, yet the Court did not dispose of the claim for that reason. Instead, *Lovasco* examined at great length the prosecutor's proffered reasons for the delay—investigative strategy—and determined that the resulting delay did not violate "'fundamental conceptions of justice which lie at the base of our civil and political institutions'" and which define "'the community's sense of fair play and decency.'" *Lovasco*, *supra* at 790 (citations omitted). Thus, the guiding principle of *Lovasco*, which should direct our evaluation of this matter, is whether prosecuting a defendant after a delay would violate fundamental conceptions of justice in light of the reasons for delay. A showing of bad faith is not necessary when the defendant has been so prejudiced by the delay that a criminal trial would be fundamentally unfair.

The test that I would adopt seeks a balance between the competing interests of the defendant and the government. Specifically, it would balance the prejudice to the defendant with the reasons for the delay and determine whether defendant can be given a fair trial. Once a defendant has established prejudice, the burden of explaining delay would fall on the prosecution. This approach was illustrated in *Bisard*, *supra*, which held:

> When a delay is deliberately undertaken to prejudice a defendant, little actual prejudice need be shown to establish a due process claim. Where, however, there is a justifiable reason for the delay, the defendant must show more—that the prejudice resulting from the delay outweighs any reason provided by the state. [*Id*. at 790.]

The defendant bears the initial burden of showing prejudice; once this is shown, the prosecutor has the burden to show that the reason for the delay is sufficient to justify whatever prejudice resulted. *Id*. at 791.

Regardless of whether we adopt the standard articulated by *Bisard* or a different variation of a balancing test, the proper inquiry is best defined by applying *Lovasco*'s principles to particular cases. This case would have been an excellent vehicle because the prejudice is so stark. Most other prearrest delay cases involve a matter of months or perhaps a couple of years, not 40 years. In this case, there is no question that defendant would be prejudiced by facing a trial in which all the original evidence has been destroyed, the remaining scientific testing was done on a decomposed corpse, and many of the original witnesses have died or have faded memories. It suffices to say that an evaluation of the prejudice to the defendant weighs strongly in his favor. Meanwhile, the justification for the delay is weak. There is no evidence of bad faith, but there is also no indication that the delay was a necessary or even reasonable part of an ongoing investigation. In fact, defendant was suspected of and investigated for murder at the time of Sally Mercer's death, but the prosecutor at the time declined to bring charges. No new evidence arose after the original investigation that would have reasonably prompted the reinvestigation of this cold case. All the evidence tested in 1995 was available in 1968, and the toxicology screening administered in 1968 could have detected a significant level of propoxyphene if it had been present.

I am persuaded that, on these facts, the trial court did not abuse its discretion in dismissing this case. The prejudice to this defendant far outweighs the state's interest in resuming pursuit of this prosecution after a lengthy and unjustifiable delay. Accordingly, I would reverse the decision of the Court of Appeals and reinstate the circuit court's order dismissing the case.

KELLY, J., joins the statement of CAVANAGH, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 25, 2008

Clerk

t0722