**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED DECEMBER 30, 2008

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

No. 135989

MICHAEL ALLEN MILLER,

Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to consider whether defendant is entitled to a new trial on the basis that a convicted felon served as a juror in his original trial. The trial court held that defendant is not entitled to a new trial because he failed to establish actual prejudice. The Court of Appeals, on the other hand, held that defendant is entitled to a new trial because the presence of the convicted felon on his jury did prejudice him. We do not believe that the trial court abused its discretion in denying defendant's motion for a new trial under these circumstances because the trial court did not clearly err in concluding that defendant failed to establish that he was actually prejudiced. Accordingly, we reverse the judgment

of the Court of Appeals and remand this case to the Court of Appeals for it to address defendant's remaining issues.

## I. FACTS AND PROCEDURAL HISTORY

Following a jury trial, defendant was convicted of first-degree criminal sexual conduct for forcing his then-girlfriend's seven-year-old daughter to perform fellatio on him. Before sentencing, defendant learned that one of the jurors had concealed the fact that he had been convicted of assault with intent to commit criminal sexual conduct in 1991 and 1999 for having assaulted his sister and another person to whom he referred as an "adopted child" who was "more like a niece." An evidentiary hearing was held. The juror in question stated that he did not reveal his prior convictions on his juror questionnaire because they were old and he did not believe that they were even on his record anymore.[1] He further stated that because he had pleaded guilty in both of his criminal cases, he had never before been through a jury selection process. When asked whether he had been intentionally untruthful so that he could sit as a juror, he answered, "no," and he indicated that he "didn't really want to sit on the panel in the first place . . . ." The juror further testified that he had tried to be fair during the trial and that he never tried to improperly persuade the jury. Following this testimony, the trial court denied defendant's motion for a new trial, ruling that there was no evidence

---

[1] The juror questionnaire asked, "Have you ever been a victim, witness, plaintiff or defendant in a criminal or civil suit?" It also asked, "Have you ever been convicted of a felony?" The juror answered "no" to both questions.

2

that defendant had suffered actual prejudice.[2]  The trial court explained that if the parties had known about the juror's past convictions, the prosecutor, not the defendant, would have most likely been the one seeking to excuse this juror.  On appeal, the Court of Appeals reversed defendant's conviction and remanded for a new trial on the basis of juror misconduct.[3]  Unpublished opinion per curiam, issued January 17, 2008 (Docket No. 273488).  We granted the prosecutor's application for leave to appeal and limited the issues to:

> (1) whether the Court of Appeals erred in reversing the defendant's conviction and remanding this case to the circuit court for a new trial pursuant to *People v DeHaven*, 321 Mich 327 (1948); (2) whether *DeHaven* was wrongly decided or has been superseded

---

[2] During voir dire, defense counsel asked whether jurors had any family member or friend who was a lawyer, a judge, or anyone involved in the criminal justice system, such as a jail guard or prison guard.  Because the juror did not believe that he fit into any of those categories, he did not answer the question affirmatively.  During voir dire, the prosecutor asked whether jurors "had personal dealings with criminal sexual conduct in [their] immediate, close family to where -- to the point where they think they can't be fair in this kind of trial."  The juror did not answer this question affirmatively because he believed that he could be fair.  The trial court determined that although the juror answered the questions on the juror questionnaire untruthfully, he did not answer any of the voir dire questions untruthfully given the examples and the qualifiers that were used by the attorneys in the potentially applicable questions.  The trial court further concluded that the juror was not attempting to be deceitful and that he did not have any ulterior motives in answering the questions in the manner that he did.

[3] The Court of Appeals agreed with the trial court that

> [w]hile the juror clearly misrepresented his status on the questionnaire with regard to criminal history, . . . the questions during voir dire, as framed and qualified, did not technically require the juror to divulge his past convictions, so it cannot be said that the juror lied or made a misrepresentation during voir dire. [Unpublished opinion per curiam, issued January 17, 2008 (Docket No. 2734888), p 2.]

3

by MCL 600.1354(1); (3) whether a criminal defendant must establish actual prejudice pursuant to MCL 600.1354(1) where the challenged juror was excusable for cause; (4) how the "actual prejudice" standard for purposes of MCL 600.1354(1) should be defined; and (5) whether the juror's failure to disclose his status as a felon, which disqualified him from serving on the jury, constituted structural error pursuant to *Neder v United States*, 527 US 1 (1999). [481 Mich 851, 851-852 (2008).]

## II. STANDARD OF REVIEW

A trial court's factual findings are reviewed for clear error. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). A trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion. *Cress*, 468 Mich at 691. An abuse of discretion occurs only "when the trial court chooses an outcome falling outside [the] principled range of outcomes." *People v Babcock,* 469 Mich 247, 269; 666 NW2d 231 (2003).

## III. ANALYSIS

There are several statutory qualifications that a person must satisfy in order to be eligible to serve as a juror. MCL 600.1307a(1) provides:

> To qualify as a juror a person shall:
>
> (a) Be a citizen of the United States, 18 years of age or older, and a resident in the county for which the person is selected, and in the case of a district court in districts of the second and third class, be a resident of the district.
>
> (b) Be able to communicate in the English language.

4

(c) Be physically and mentally able to carry out the functions of a juror. Temporary inability shall not be considered a disqualification.

(d) Not have served as a petit or grand juror in a court of record during the preceding 12 months.

(e) *Not have been convicted of a felony.* [Emphasis added.]

If a potential juror does not satisfy one of these statutory qualifications, a party may challenge the potential juror for cause. MCR 2.511(D)(1). There are also several other grounds that would justify a challenge for cause. MCR 2.511(D) provides, in pertinent part:

It is grounds for a challenge for cause that the person:

(1) *is not qualified to be a juror*;

(2) is biased for or against a party or attorney;

(3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;

(4) has opinions or conscientious scruples that would improperly influence the person's verdict;

(5) has been subpoenaed as a witness in the action;

(6) has already sat on a trial of the same issue;

(7) has served as a grand or petit juror in a criminal case based on the same transaction;

(8) is related within the ninth degree (civil law) of consanguinity or affinity to one of the parties or attorneys;

(9) is the guardian, conservator, ward, landlord, tenant, employer, employee, partner, or client of a party or attorney;

(10) is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution;

(11) has a financial interest other than that of a taxpayer in the outcome of the action;

5

(12) is interested in a question like the issue to be tried. [Emphasis added.]

MCR 6.412(D)(2) provides that if "the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." Similarly, MCL 600.1337 states that "[w]hen the court finds that a person in attendance at court as a juror is not qualified to serve as a juror, or is exempt and claims an exemption, the court shall discharge him or her from further attendance and service as a juror." Finally, MCL 600.1354(1) states, in pertinent part:

> Failure to comply with the provisions of this chapter shall not . . . affect the validity of a jury verdict unless the party . . . claiming invalidity has made timely objection and unless the party demonstrates *actual prejudice* to his cause and unless the noncompliance is substantial. [Emphasis added.]

In the instant case, because the juror in question was a convicted felon, he was not statutorily qualified to serve as a juror under MCL 600.1307a(1)(e). However, as a result of the juror's false answers on his juror questionnaire, neither of the parties nor the trial court had any knowledge of the juror's felony convictions, and, thus, the parties did not challenge the juror pursuant to MCR 2.511(D)(1) and the trial court did not discharge the juror pursuant to MCL 600.1337 and MCR 6.412(D)(2). Accordingly, the issue here is whether defendant is entitled to a new trial as a result of this convicted felon having served on his jury.

6

Although a criminal defendant has a constitutional right to be tried by an impartial jury, US Const, Am VI;[4] Const 1963, art 1, § 20,[5] a criminal defendant does not have a constitutional right to be tried by a jury free of convicted felons.[6]

---

[4] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." US Const, Am VI.

[5] "In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury . . . ." Const 1963, art 1, § 20.

[6] In *United States v Uribe,* 890 F2d 554, 562 (CA 1, 1989), the United States Court of Appeals for the First Circuit held that a "statutory violation-- allowing a convicted felon to serve-- did not implicate the fundamental fairness of the trial or the defendants' constitutional rights." "The fact that a juror technically should have been disqualified, and was not, does not automatically require a new trial." *Id.* Instead, under such circumstances, the defendant is required to prove prejudice. *Id.*; see also 47 Am Jur 2d, Jury, § 152, p 759 ("The Sixth Amendment does not require automatic reversal of every conviction reached by a jury that included a felon."); Anno: *Disqualification or exemption of juror for conviction of, or prosecution for, criminal* offense, 75 ALR5th 295, 310, § 3[b] (stating that several courts have "held that the constitutional right to a fair and impartial jury was not violated by the . . . failure to exclude convicted felons"); *United States v Barker,* 1999 US App LEXIS 9459, *3 (CA 4, 1999) ("Although convicted felons are statutorily excluded from jury service, a criminal defendant does not have a corresponding constitutional right to have convicted felons absolutely barred from serving on his jury. The Sixth Amendment only requires that the jury be free from bias.") (citation omitted); *Coleman v Calderon*, 150 F3d 1105, 1117 (CA 9, 1998) ("The Sixth Amendment does not bar ex-felons from jury service."), overruled on other grounds 525 US 141 (1998); *Coughlin v Tailhook Ass'n,* 112 F3d 1052, 1059 (CA 9, 1997) ("[T]he participation of a felon-juror is not an automatic basis for a new trial."); *United States v Boney,* 314 US App DC 287, 289; 68 F3d 497 (1995) ("[T]he Sixth Amendment does not absolutely bar felon-jurors. Rather, the appropriate remedy for an allegation of juror bias is to hold an evidentiary hearing in order to determine whether the juror's failure to disclose his felon status resulted in 'actual bias' to the defendant.") (citation omitted); *United States v Humphreys,* 982 F2d 254, 261 n 5 (CA 8, 1992) ("'The Sixth Amendment right to an impartial jury does not require an absolute bar on felon-jurors.'") (citation omitted). The fact that before MCL 600.1307a(1)(e) was amended in 2002, convicted felons who had already served their sentences were qualified to serve as

Instead, the right to a jury free of convicted felons is granted by statute. And by statute, a violation of this "right" only requires a new trial if the defendant demonstrates that such a violation "actual[ly] prejudice[d]" him. MCL 600.1354(1).[7]

A juror's failure to disclose information that the juror should have disclosed is only prejudicial if it denied the defendant an impartial jury.[8] "[Defendants] are

---

jurors underscores that the "right" to a jury free of convicted felons is not a constitutional right.

[7] At oral argument before this Court, defense counsel argued that defendant was denied his right to a 12-member jury, see Const 1963, art 1, § 20; MCR 6.410(A), because the convicted felon was not qualified to serve as a juror. First, this issue is unpreserved, as defendant did not raise it until oral argument before this Court. Second, defendant fails to recognize that although MCL 600.1307a(1)(e) provides that a convicted felon is not qualified to serve as a juror, MCL 600.1354(1) provides that a violation of this rule "shall not . . . affect the validity of a jury verdict unless the party . . . claiming the invalidity . . . demonstrates actual prejudice . . . ." The Legislature was free to decide to either allow or not allow convicted felons to serve as jurors. Accordingly, it was likewise free to allow a jury verdict obtained from a jury that included a convicted felon to not be automatically invalidated. That is, the Legislature was free to provide, as it did, that a 12-member jury that includes a convicted felon is nevertheless a 12-member jury. Furthermore, if the defendant were correct that every conviction that was obtained from a jury with an unqualified juror on it had to be reversed, all jury verdicts would be second-guessed. That is, every jury verdict in the state of Michigan would be contingent upon a court subsequently determining that none of the jurors who sat on the jury was statutorily disqualified for one reason or another.

[8] Contrary to the dissent, we *do* "address how the 'actual prejudice' standard for purposes of [MCL 600.1354(1)] should be defined." *Post* at 17. To repeat, a juror's failure to disclose information that the juror should have disclosed constitutes "actual prejudice" if it denied the defendant an impartial jury. Although we recognize that it may be difficult, although not impossible, for a defendant to establish that he was "actually prejudiced," the Legislature could not have been clearer that a defendant is not entitled to a new trial unless the

8

not entitled to a new trial unless the juror's failure to disclose denied [the defendants] their right to an impartial jury." *McDonough Power Equip, Inc v Greenwood,* 464 US 548, 549; 104 S Ct 845; 78 L Ed 2d 663 (1984). "'The misconduct must be such as to reasonably indicate that a fair and impartial trial was not had . . . .'" *People v Nick,* 360 Mich 219, 230; 103 NW2d 435 (1960), quoting 39 Am Jur, New Trial, § 70, p 85.[9]

In *Froede v Holland Ladder & Mfg Co*, 207 Mich App 127, 135; 523 NW2d 849 (1994), the Court of Appeals held that actual prejudice was established because the juror at issue had deliberately misrepresented her criminal history on the juror questionnaire and had previously hired an assassin to kill a drug informant who had agreed to testify against the juror's ex-husband (a notorious drug kingpin). However, the Court of Appeals "caution[ed] that our opinion is not to stand for the proposition that prejudice will always be found when a convicted felon makes a misrepresentation on a juror questionnaire or at voir dire." *Id.* The Court of Appeals clearly indicated that its bases for finding actual prejudice were

---

defendant "demonstrates actual prejudice to his cause . . . ." MCL 600.1354(1). Unlike the dissent, we are simply unwilling to disregard this clear directive from the Legislature.

[9] When information that affects a juror's qualifications to sit as a juror is discovered after the trial, "most states . . . require a showing of juror bias" before they will grant the defendant a new trial. Note, *When jurors lie: differing standards for new trials,* 22 Am J Crim L 733, 737 (1995).

9

the juror's *deliberate* misrepresentation and the nature of the juror's criminal history, i.e., she hired an assassin to kill a potential witness.  *Id.*[10]

In *People v Carey*, 110 Mich App 187, 193; 312 NW2d 205 (1981), the Court of Appeals held that the trial court did not err in failing to declare a mistrial when it was discovered shortly after deliberations had begun that one of the jurors was a convicted felon, in part because defendant did not demonstrate that he had been actually prejudiced.  In reaching this conclusion, the Court of Appeals relied on the fact that the "juror testified that his convictions would not affect his ability to render an impartial verdict."  *Id.*[11]

As we explained earlier, defendants have a constitutional right to an impartial jury.  However, as Justice Cooley, writing for this Court, explained, jurors are "presumed to be . . . impartial, until the contrary is shown."  *Holt v*

---

[10] The instant case is obviously distinguishable from *Froede*.  Unlike the juror in *Froede,* the juror here did not deliberately misrepresent his criminal history.  Rather, the trial court stated, "I don't find that he was attempting to be deceitful or that he had any ulterior motive in answering these questions that way," and we have no reason to believe that the trial court clearly erred in making such a finding.  In addition, unlike the juror in *Froede,* the juror here had never been convicted of any crimes involving tampering with the administration of justice.

[11] Likewise, in *People v Johnson,* 245 Mich App 243; 631 NW2d 1 (2001), the Court of Appeals affirmed the defendant's domestic violence conviction.  The defendant was not entitled to a new trial even though one of the jurors was a complainant in a domestic violence prosecution, in part because the defendant had not demonstrated that he was actually prejudiced.  In the lead opinion, Judge O'Connell explained that, "[o]n the basis of the juror's assurances [that she could be fair and impartial], and the trial court's acceptance of her assurances, we see no reasonable probability that the outcome of the case would have been different."  *Id.* at 259-260 (opinion by O'Connell, J.).

*People*, 13 Mich 224, 228 (1865). The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt. *Id.*[12]

In *Nick,* the defendant argued that he was entitled to a new trial because one of the jurors had failed to disclose the fact that her father was an attorney practicing in the area and defense counsel had made some reference to her father during the trial. This Court held that the defendant was not entitled to a new trial because he had not established that the juror was not impartial. *Nick,* 360 Mich at 234. As this Court explained:

---

[12] The pertinent paragraph from *Holt,* 13 Mich at 228, states:

> [I]t must be borne in mind that a person called as a juror is presumed to be qualified and impartial, until the contrary is shown. The challenging party takes upon himself the burden of proving the disqualification, and he does not relieve himself of that burden until he has made out a *prima facie* case, or, in criminal cases, such a case, at the least, as leaves the juror's impartiality in reasonable doubt. It is not sufficient for him to prove facts, from which vague inferences of bias or favor can be drawn, and then demand that his adversary shall be concluded unless he rebuts those inferences by countervailing testimony.

*Holt* predated the enumeration of statutory disqualifications now contained in MCL 600.1307a. The issue in *Holt* was whether the defendant was denied his right to an impartial jury. Accordingly, *Holt*'s discussion of juror "disqualification" was clearly not in reference to the statutory juror disqualifications at issue in the instant case, but, rather, was in reference to a juror's ability to remain impartial. Contrary to the dissent, *Holt* very clearly states that the burden is on the defendant to prove that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt. *Id.* Although the dissent concludes that "*Holt* requires less than actual bias," *post* at 18 n 45, it fails to explain how a defendant is to place the juror's impartiality in reasonable doubt without offering evidence in support of that proposition.

11

"[I]t is well established that not every instance of misconduct in a juror will require a new trial. The general principle underlying the cases is that the misconduct must be such as to affect the impartiality of the jury . . . . A new trial will not be granted for misconduct of the jury if no substantial harm was done thereby to the party seeking a new trial . . . . The misconduct must be such as to reasonably indicate that a fair and impartial trial was not had . . . ." [*Id.* at 230, quoting 39 Am Jur, New Trial, § 70, p 85.][13]

In the instant case, defendant's only complaint about the juror at issue in this case is that he is a convicted felon.[14] However, defendant has offered no

---

[13] Similarly, the United States Supreme Court has held:

[T]o obtain a new trial . . . , a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's *impartiality* can truly be said to affect the fairness of a trial. [*McDonough,* 464 US at 556 (second italics added).]

Although the federal standard requires a new trial if a "correct response would have provided a valid basis for a challenge for cause," this is because of the fact that there is no federal rule listing specific grounds for challenges for cause; instead, challenges for cause are only permitted upon a showing that the juror is not capable of being impartial. Because Michigan's rule *does* list grounds for challenges for cause, and because one of these grounds is that the juror is not qualified to sit as a juror (which qualifications do not pertain to a juror's capability of being impartial), our standard to obtain a new trial does not focus on whether a "correct response would have provided a valid basis for a challenge for cause," but, instead, focuses on whether the juror was impartial. As the United States Supreme Court has explained, "[defendants] are not entitled to a new trial unless the juror's failure to disclose denied [defendants] their right to an impartial jury." *Id.* at 549.

[14] Defendant argues that the juror was excusable for cause under MCR 2.511(D)(1) to (4), (6), (10), and (12). However, his basis for all of these arguments is the juror's status as a convicted felon. In defendant's motion for a new trial, defendant only argued that defendant was excusable for cause under MCR 2.511(D)(1) and (12). Nevertheless, even assuming that the defendant had properly preserved all the grounds that he is now raising, we would still conclude

12

evidence that the juror was not impartial. In *Holt,* 13 Mich at 229, the Court concluded that the juror's own admission that he had formed a partial opinion regarding the defendant's guilt before the trial even began was not sufficient to rebut that juror's impartiality.[15] If even such an admission is not sufficient to rebut

that defendant is not entitled to a new trial. That is, for the same reasons that we conclude that defendant failed to establish that the juror was partial, defendant failed to establish that the juror was "biased"; "show[ed] a state of mind that [would] prevent [him] from rendering a just verdict"; had "formed a positive opinion" about the case; had "opinions or conscientious scruples that would improperly influence [his] verdict"; or was "interested." MCR 2.511(D)(2) to (4) and (12). In addition, the juror had not "already sat on a trial of the same issue" and had not "complained of or . . . been accused by [defendant] in a criminal prosecution." MCR 2.511(D)(6), (10).

[15] The dissent fails to recognize that its conclusion that a defendant is entitled to a new trial any time a juror had a "preconceived opinion or feeling," *post* at 19, is wholly at odds with this Court's decision in *Holt,* which held that the "'mere statement of a juror, that he has formed an opinion, is not sufficient to disqualify him.'" *Holt,* 13 Mich at 230 (citation omitted). Furthermore, the dissent's statement that, because the juror in this case committed similar crimes, he "must have had preconceived notions about defendant" is nothing more than pure speculation. *Post* at 19. Finally, although we commend the dissent for its resort to a dictionary, it completely ignores the context of the word that it is attempting to define. That is, the dissent concludes that a juror is prejudiced if he or she had a "preconceived opinion or feeling." *Post* at 19. However, MCL 600.1354(1) does not use the word "prejudice" in terms of the *juror's* "prejudice." Instead, it uses this word in terms of the *defendant's* prejudice. MCL 600.1354(1) states that a defendant is not entitled to a new trial unless the defendant demonstrates "actual prejudice to his cause . . . ." In *this* context, it is clear that the most applicable definition of "prejudice" is "damage or injury; detriment," *Random House Webster's College Dictionary* (2001), which the dissent quotes *post* at 19. A defendant is damaged or injured as a result of a juror withholding relevant information only if that juror was not impartial.

Moreover, to disagree, as we do, with the dissenting justice on the appropriate definition of a term having multiple definitions-- in this instance "prejudice"-- is hardly, as the dissent asserts, to manifest an "unquestioning confidence" in our own "ability to decide which dictionary definition of a word

the presumption of impartiality, we fail to see how a juror's mere *status* as a convicted felon can be considered sufficient to rebut that presumption.

Defendant has not offered any evidence to demonstrate that he was prejudiced by the convicted felon's presence on his jury.[16] That is, defendant has offered no evidence to establish that the juror was partial. The juror testified that his status as a felon did not affect his deliberations and that he did not share this information with the other jurors or try to improperly persuade the rest of the jurors in any way.[17] There is simply no evidence that this juror improperly affected any other jurors. Furthermore, as the trial court explained, this juror

---

the Legislature intended." *Post* at 19 n 48. Rather, it is simply to manifest a belief that the dissenting justice is wrong.

[16] The dissent likewise does not direct us toward any evidence of prejudice. Instead, it simply *presumes* prejudice from the fact that the juror was statutorily disqualified. However, if such a presumption were permitted, MCL 600.1354(1) would be rendered meaningless. MCL 600.1354(1) specifically states that failure to comply with the statutory qualifications does *not* require a new trial unless the defendant demonstrates "actual prejudice." Yet, under the dissent's approach, failure to comply with the statutory qualifications would *always* require a new trial. Moreover, contrary to the dissent's contention, "an *appearance* of potential bias" is not "*actual* prejudice"; rather, it is, quite obviously, only an *appearance* of prejudice. *Post* at 15 (emphasis added). MCL 600.1354(1), however, clearly requires the defendant to demonstrate "*actual* prejudice." (Emphasis added.) The dissent criticizes us for equating "actual prejudice" and "actual bias." However, it fails to explain how a juror's failure to disclose information that he or she should have disclosed could actually prejudice a defendant if the juror was not actually biased.

[17] According to the trial court, the juror stated that "I had that experience, but I can be essentially fair and objective; I can be fair to the parties in this case."

14

would likely have been more harmful to the prosecutor than to defendant.[18]

Having been previously convicted of similar offenses, the juror, if anything, likely

would have been sympathetic towards defendant.[19]  For these reasons, we do not

---

[18] The dissent contends that defendant is entitled to a new trial "irrespective of which way [the juror's] bias is expected to cut . . . ." *Post* at 22.  However, this contention is clearly erroneous given that MCL 600.1354(1) expressly states that the defendant must demonstrate "actual prejudice *to his cause* . . . ."  (Emphasis added.)

[19] As the trial court explained:

> I'm sure that . . . had [the juror] answered those questions accurately in the questionnaire[,] the prosecutor would not have permitted him to stay on the jury. . . .  I have fairly equal confidence that a defense attorney, knowing that [a] person . . . convicted of a crime is called to sit as a juror, especially a trial of someone who is accused of a similar type of crime, would not exercise a . . . challenge.  [The] [d]efense attorney in this case . . . does not indicate to this Court that he would have exercised a . . . challenge had he known.

Many commentators have indicated that one of the rationales behind excluding convicted felons from juries is the belief that convicted felons are biased against the *government*.  See, e.g., Binnall, *EG1900 . . . The number they gave me when they revoked my citizenship: Perverse consequences of ex-felon civic exile,* 44 Willamette L R 667, 672 (2008) ("One such character trait of concern to those advocating for felon exclusion from jury service is 'that felons remain adversarial towards the government and will sympathize unduly with any criminal defendant.'") (citation omitted); Note, *A jury of one's peers: Virginia's restoration of rights process and its disproportionate effect on the African American community,* 46 Wm & Mary L R 2109, 2136 (2005) ("The state's policy argument is based on the premise that a convicted felon may be sympathetic toward a criminal defendant . . . ."); Kalt, *The exclusion of felons from jury service,* 53 Am U L R 65, 74, 104 (2003) ("'[A] person who has suffered the most severe form of condemnation that can be inflicted by the state . . . might well harbor a continuing resentment against "the system" that punished him and an equally unthinking bias in favor of the defendant on trial, who is seen as a fellow underdog caught in its toils.' . . . [A] felon's 'former conviction and imprisonment [may] ordinarily incline him to compassion for others accused of crime.'  In other words, a felon

believe that the trial court clearly erred in ruling that defendant had not demonstrated that he was actually prejudiced by the convicted felon's presence on his jury.[20]

In addition, the presence of a convicted felon on defendant's jury did not constitute structural error. A structural error is a "fundamental *constitutional* error[] that 'def[ies] analysis by "harmless error" standards.'" *Neder v United States*, 527 US 1, 7; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (emphasis added; citations omitted). Here, there was no constitutional error. As discussed above, there is no constitutional right to have a jury free of convicted felons. Therefore, that a convicted felon sat as a juror on defendant's jury did not constitute a structural error.

The Court of Appeals in the instant case relied heavily on *People v DeHaven*, 321 Mich 327; 32 NW2d 468 (1948), *People v Daoust*, 228 Mich App

---

will be less willing, if not unwilling altogether, to subject another person to the horrors of punishment that he has endured, and may engage in nullification. He may also exhibit mistrust of police and prosecutors, and give unduly short shrift to their testimony and arguments.") (citations omitted); Note, *Invaluable tool vs. unfair use of private information: Examining prosecutors' use of jurors' criminal history records in voir dire,* 56 Wash & Lee L R 1079, 1088-1089 (1999) ("A juror convicted of a crime is likely to harbor animosity towards the government . . . . The potential for this animosity to ripen into a bias against the government's case increases when the crime underlying the juror's conviction is similar to the crime for which the defendant stands charged.").

[20] To answer the dissent's question, *post* at 22, of course convicted felons can be challenged by defendants for bias. However, a juror's mere status as a convicted felon does not by itself establish bias, and, thus, the challenging defendant will have to come forth with some actual argument concerning such bias.

1; 577 NW2d 179 (1998), *People v Manser*, 250 Mich App 21; 645 NW2d 65 (2002), and *People v Crear*, 242 Mich App 158; 618 NW2d 91 (2000), to conclude that defendant is entitled to a new trial. However, none of those cases involved the question that is at issue here: whether the presence of a convicted felon on a defendant's jury requires a new trial. Furthermore, none of those cases involved the application of MCL 600.1354(1) because none involved "failure[s] to comply with the provisions of [chapter 13 of the Revised Judicature Act, MCL 600.1300 *et seq*.],"[21] and because *DeHaven* was decided before MCL 600.1354(1) was even enacted.

In *DeHaven*, a case in which the defendant was charged with and ultimately convicted of raping his 13-year-old stepdaughter, two related jurors failed to disclose that one of their family members had been convicted of raping his 13-year-old daughter. The trial court found that the jurors had not been dishonest during voir dire, that they had indicated that they could fairly and impartially sit as jurors, and that any prejudices the jurors did have would likely have benefitted the defendant anyway. For these reasons, the trial court denied the defendant's motion for a new trial. This Court reversed.

After indicating that the "right to be tried by an impartial jury is a constitutional guaranty," *DeHaven* concluded:

---

[21] The dissent altogether ignores that none of those cases involved the application of MCL 600.1354(1).

17

The normal person revolts at the thought of a father or stepfather raping a 13-year-old girl. We are of the opinion that the relationship of these two jurors to one who had committed a similar crime was such that it deprived them of the capacity to act impartially. Defendant has the right to a trial by an impartial jury. We cannot say that he had such a trial. [*DeHaven*, 321 Mich at 334.]

As discussed earlier, *DeHaven* is distinguishable from the instant case because the former did not involve a juror who was a convicted felon and it did not involve MCL 600.1354(1).[22] In addition, it appears that *DeHaven* reviewed de novo the question whether the two jurors were biased, rather than for clear error. As discussed above, an appellate court must review a trial court's factual findings for clear error, *Cress*, 468 Mich at 691, and the appellate court should only reverse such findings if it is "left with a definite and firm conviction that a mistake has been made." *Johnson*, 466 Mich at 497-498. In *DeHaven,* the trial court determined that the jurors were not biased, but, even if they were, such bias would have benefitted the defendant. *DeHaven,* 321 Mich at 331. *DeHaven*, however, did not even mention the trial court's factual findings in its analysis, and clearly

---

[22] In *DeHaven*, the jurors had a *family member* who was a convicted rapist and a family member who was a rape *victim,* while, in the instant case, the juror was *himself* convicted of assault with the intent to commit criminal sexual conduct. As *DeHaven* indicated, the "normal person revolts at the thought of a father or stepfather raping a 13-year-old girl." *DeHaven*, 321 Mich at 334. Accordingly, in *DeHaven*, it is significantly more likely that the jurors, if anything, would have been prejudiced *against* the defendant because a 13-year-old girl in their family had recently been a victim of such a revolting crime. On the other hand, in the instant case, as discussed earlier, it is more likely that the juror, if anything, would have been prejudiced *in favor* of the defendant because the juror had himself been convicted of similar crimes, although obviously this is all speculative.

18

reviewed the issue de novo. That is, *DeHaven* concluded that the jurors were biased and that they were biased against the defendant, without giving any significance to the fact that the trial court, which was obviously in the better position to determine whether the jurors were biased and against which party, had already concluded that the jurors were not biased, but, if they were, they were biased in favor of the defendant.

*DeHaven* also reviewed de novo, rather than for an abuse of discretion, the issue whether defendant was entitled to a new trial. As discussed earlier, a trial court's decision to deny a motion for a new trial must be reviewed for an abuse of discretion. *Cress,* 468 Mich at 691. An abuse of discretion occurs only "when the trial court chooses an outcome falling outside [the] principled range of outcomes." *Babcock,* 469 Mich at 269. In *DeHaven,* the trial court held that the defendant was not entitled to a new trial. However, *DeHaven*, without giving any significance at all to the trial court's decision, held that the defendant was entitled to a new trial. That is, *DeHaven* clearly engaged in de novo, rather than abuse of discretion, review, as it should have.[23]

---

[23] We are simply perplexed by the dissent's assertion that the standard of review is "irrelevant." *Post* at 13. An appellate court cannot even begin to review a trial court's decision without knowing what the applicable standard of review is, and the fact that an appellate court has employed a plainly inappropriate standard should, at the least, cause future courts to hesitate before they rely on that prior decision. Furthermore, contrary to the dissent, an appellate court cannot effectively immunize itself from criticism for failing to apply the correct standard of review by simply not stating *what* standard of review is being applied.

Moreover, our "harmless error" jurisprudence has evolved significantly since *DeHaven* was decided in 1948. As explained in *People v Bell,* 473 Mich 275, 294; 702 NW2d 128 (2005) (opinion by Corrigan, J.), "our harmless error jurisprudence has evolved a great deal . . . ." Errors generally no longer require automatic reversal. *Id.*, citing *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). Instead, a preserved, nonconstitutional error is not a ground for reversal unless the defendant proves that it is "more probable than not that the error was outcome determinative." *People v Lukity,* 460 Mich 484, 495-496; 596 NW2d 607 (1999). Even a preserved, constitutional error is generally not a ground for reversal if the prosecutor proves that the error was harmless beyond a reasonable doubt. *People v Anderson (After Remand),* 446 Mich 392, 406; 521 NW2d 538 (1994).[24] An unpreserved error is not a ground for reversal unless the defendant can demonstrate that the error was plain, that it affected the outcome, and that it resulted in the conviction of an actually innocent person or "'"seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" . . . .'" *Carines,* 460 Mich at 763-764 (citations omitted).

With regard to the specific issue here, i.e., juror misconduct, this Court has held that "a verdict in a criminal case should not be upset because of alleged misconduct on the part of members of the jury unless 'substantial harm' has resulted . . . ." *Nick,* 360 Mich at 230. "'"[A litigant] is entitled to a fair trial but

---

[24] As discussed earlier, a structural error that defies "harmless error" analysis still requires automatic reversal. *Anderson,* 446 Mich at 405.

not a perfect one" for there are no perfect trials.'" *McDonough,* 464 US at 553 (citations omitted). "We have . . . come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered "'citadels of technicality."'" *Id.* (citations omitted). "The harmless-error rules . . . embody the principle that courts should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *Id. DeHaven*, however, made absolutely no mention of any "harmless error" standard.

Finally, the crux of *DeHaven*'s holding was that a defendant has a constitutional right to an impartial jury and, because the jurors at issue in *DeHaven* lacked the capacity to act impartially, the defendant was entitled to a new trial. *DeHaven,* 321 Mich at 334. There is no question that a criminal defendant has a constitutional right to be tried by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20. However, the instant question is whether the presence of a convicted felon on defendant's jury denied defendant his right to an impartial jury. For all the reasons noted earlier, *DeHaven* is neither binding nor persuasive precedent with regard to this question.[25]

In *Daoust*, the defendant was charged with two counts of first-degree child abuse on the basis of injuries that he inflicted on his girlfriend's daughter. On the

---

[25] The dissent criticizes us for not overruling *DeHaven*. However, we do not do so because we simply do not see it as being controlling with regard to the issue here.

21

morning of the second day of defendant's trial, during a break in the girlfriend's testimony, one of the jurors indicated that he may have attended junior high school with the girlfriend. The trial court denied defendant's request to remove the juror, and the Court of Appeals held that defendant was not entitled to a new trial. The Court of Appeals held that

> when information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was actually prejudiced by the presence of the juror in question *or* (2) that the juror was properly excusable for cause. [*Daoust*, 228 Mich App at 9 (emphasis added); see also *Crear*, 242 Mich App at 167, which cited this two-part test with approval.]

To the extent that in *Daoust* the Court of Appeals broadly states in dicta that a new trial is *always* required whenever a juror would have been excusable for cause, *Daoust* is wrong and is overruled.[26] As discussed earlier, the proper inquiry is whether the defendant was denied his right to an impartial jury. If he was not, there is no need for a new trial.

## IV. CONCLUSION

The trial court did not clearly err in finding that defendant failed to establish that he was actually prejudiced by the presence of a convicted felon on

---

[26] To the extent that *Crear* and *Manser* relied on *Daoust* for this proposition, they are also wrong and overruled. The dissent contends that there is no reason to overrule these decisions because they can be "read harmoniously with § 1354(1) in that, if a juror is excusable for cause and is left impaneled, actual prejudice results." *Post* at 15. However, as discussed in footnote 16 of this opinion, presuming prejudice on the basis of a statutory disqualification would render MCL 600.1354(1) meaningless.

22

his jury, and, thus, the trial court did not abuse its discretion when it denied defendant's motion for a new trial. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals for it to address defendant's remaining issues.

Stephen J. Markman
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                        No. 135989

MICHAEL ALLEN MILLER,

      Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

At issue in this case is whether defendant is entitled to a new trial because a convicted felon served as a juror in his original trial. The majority concludes that the trial court correctly denied defendant's motion for a new trial. The court ruled that defendant had failed to establish that he was actually prejudiced, pursuant to MCL 600.1354(1), by the presence of a convicted felon on his jury. The majority finds no clear error in this ruling. For the reasons set forth below, I believe that the Court of Appeals properly reversed the trial court and granted defendant a new trial. Its opinion should be affirmed.

I. FACTS AND PROCEDURAL HISTORY

The Ottawa County Prosecutor's Office charged defendant with one count of first-degree criminal sexual conduct (CSC I). The charge was based on defendant's alleged act of forcing his ex-girlfriend's seven-year-old daughter to perform fellatio on him. Following a two-day jury trial, defendant was convicted

as charged.  Defense counsel then learned that one of the deliberating jurors, Jesse Lara, was a registered sexual offender.  Defendant filed a motion for a new trial based on juror misconduct.  Lara had answered "No" to a question on his juror questionnaire regarding whether he had ever been a defendant in a criminal case.

The trial court held an evidentiary hearing.  Lara testified that he had been convicted of assault with intent to commit sexual conduct involving penetration seven years before and criminal sexual conduct 15 years before.  As a result of these convictions, he was required to register with the Michigan Public Sexual Offender Registry.  Lara also testified that one of his victims was his sister.  He referred to the other as "an adopted child" who was "more like a niece."  Lara further stated that he had completed and signed a juror questionnaire that contained the following question: "Have you ever been a victim, witness, plaintiff, or defendant in a criminal or civil suit?"  The questionnaire also asked whether he had been convicted of a felony, misdemeanor, or traffic violation.  He answered "No" to both questions.

Lara justified his "No" answers by stating that he had been untruthful "because that was a long time ago."  He claimed that he thought his convictions would remain on his record only "for maybe seven years."  Essentially, he claimed that he believed his convictions to be too old to matter.  Lara acknowledged that he never asked for clarification from the trial judge or lawyers for either party about whether he was required to divulge his prior criminal convictions.  Accordingly, he did not volunteer his convictions during voir dire.

2

Lara claimed that he tried to be fair during the trial. He asserted that he never tried to persuade the jury in any particular way because of his personal criminal history. He said that he never disclosed his prior convictions during deliberations or the fact that he had personal experience with how criminal cases are handled.

The judge concluded that Lara was truthful during the evidentiary hearing. The judge also determined that, had Lara answered the questions on the juror questionnaire truthfully, the prosecutor would have had him excused from the jury. The judge concluded:

> I have fairly equal confidence that a defense attorney, knowing that the person . . . convicted of a crime is called to sit as a juror, especially a trial of someone who is accused of a similar type of crime, would not exercise a peremptory challenge . . . . Defendant does not indicate to this court that he would have exercised a peremptory challenge had he known.
> There is no evidence presented at this hearing or anything from any other source that Mr. Lara's presence on the jury resulted in actual prejudice to the defendant.

Accordingly, the trial court denied defendant's motion for a new trial.

The Court of Appeals reversed defendant's conviction and remanded for a new trial. The Court relied on *People v DeHaven*.[1] It determined that, because the crimes committed by defendant and Lara were similar in that they involved criminal sexual conduct, defendant had not been afforded a fair and impartial jury. Thus, defendant had been prejudiced within the meaning of § 1354(1).

---

[1] *People v DeHaven*, 321 Mich 327; 32 NW2d 468 (1948).

3

We granted leave to appeal[2] to determine (1) whether the Court of Appeals properly relied on *DeHaven,* (2) whether *DeHaven* has been superseded by §1354(1), (3) whether a criminal defendant must establish actual prejudice pursuant to § 1354(1) if the challenged juror was excusable for cause, (4) how the actual prejudice standard for purposes of § 1354(1) should be defined, and (5) whether Lara's failure to disclose his status as a convicted felon, which disqualified him from serving as a juror, constitutes structural error pursuant to *Neder v United States*.[3]

## II. ANALYSIS

### A. *Legal Background*

Juror qualifications are set forth in several statutes relevant to this case. MCL 600.1307a provides, in relevant part, that in order to qualify as a juror, a person shall not have been convicted of a felony.[4] Failure to comply with this provision renders a potential juror challengeable for cause.[5] Furthermore, "[i]f . . .

---

[2] *People v Miller*, 481 Mich 851, 851-852 (2008).

[3] *Neder v United States*, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

[4] MCL 600.1307a(1)(e).

[5] MCR 2.511(D) provides:

> It is grounds for a challenge for cause that the person:
>
> (1) is not qualified to be a juror;
>
> (2) is biased for or against a party or attorney;

4

the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel."[6]  This rule was also codified in MCL 600.1337, which states, "When the court finds that a . . . juror is not qualified to serve . . . , or is exempt and claims an exemption, the court shall discharge him or her from further attendance and service as a juror."  Thus, the Legislature has made clear that those

---

        (3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;

        (4) has opinions or conscientious scruples that would improperly influence the person's verdict;

        (5) has been subpoenaed as a witness in the action;

        (6) has already sat on a trial of the same issue;

        (7) has served as a grand or petit juror in a criminal case based on the same transaction;

        (8) is related within the ninth degree (civil law) of consanguinity or affinity to one of the parties or attorneys;

        (9) is the guardian, conservator, ward, landlord, tenant, employer, employee, partner, or client of a party or attorney;

        (10) is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution;

        (11) has a financial interest other than that of a taxpayer in the outcome of the action;

        (12) is interested in a question like the issue to be tried.

[6] MCR 6.412(D)(2).

5

not meeting the relevant qualifications for jury service are not to be included on a jury. Finally, MCL 600.1354(1) provides, in pertinent part:

> Failure to comply with the provisions of this chapter shall not . . . affect the validity of a jury verdict unless the party . . . claiming invalidity has made timely objection and unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial.

Michigan courts have examined the legal effect of violations of these principles on numerous occasions. The facts of the leading case on the issue, *People v DeHaven*, are strikingly similar to those of the instant case. In *DeHaven*, the defendant was charged with the rape of his 13-year-old stepdaughter.[7] The case was submitted to a jury, which returned a guilty verdict.[8] The defendant moved for a new trial, arguing that two of the jurors had failed to disclose that a member of their family had been imprisoned for a similar offense.[9] The trial court denied the motion, ruling that the jurors had not been prejudiced and that nothing indicated that, if they had been prejudiced, it would likely have benefited the defendant.[10] The defendant appealed. This Court held that the relationship of the two jurors to a person who had committed a similar crime deprived them of the

---

[7] *DeHaven*, *supra* at 329.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 331.

6

capacity to act impartially.[11]  Because criminal defendants are guaranteed the right to a trial by an impartial jury by both the United States[12] and Michigan constitutions,[13] the Court unanimously reversed defendant's judgment of conviction.[14]

This Court revisited the issue of juror misconduct in *People v Hannum*.[15] The defendant in *Hannum* was granted a new trial when a member of the jury failed to disclose that he was a township police officer and special county sheriff's deputy.  The Court, relying on *DeHaven*, held that the defendant had been denied a fair trial by an impartial jury because the lack of disclosure of the pertinent fact

---

[11] *Id*. at 334.

[12] US Const, Am VI.

[13] Const 1963, art 1, § 20.

[14] *DeHaven*, *supra* at 335.  The Court also noted:

> Examination into the competency of a juror, when he is challenged, is essentially a taking of such prospective juror's testimony to determine whether he has the statutory qualifications of a juror and is free from prejudice or interest, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. . . .  He is not, however, the judge of his own competency, impartiality, and freedom from prejudice, in the sense that his testimony is to be accepted as final and conclusive of the issue, and no statute can clothe him with such judicial discretion and power.  His competency is left to the determination of the court or of triors, who are not bound by his testimony but may rely on other evidence.  [*Id*. at 332 (internal citation and quotation marks omitted).]

[15] *People v Hannum*, 362 Mich 660; 107 NW2d 894 (1961).

7

"can hardly be thought to have insured an impartial trial any more so than in *DeHaven* . . . ."[16] Furthermore, the Court noted, "[w]ould any experienced trial lawyer, or, for that matter, the public generally, feel differently as to the capacity of a local police officer to sit as a juror and consider impartially the case of a defendant charged with a crime committed in the community? We think not."[17]

The Court of Appeals addressed the same issue in *People v Manser*.[18] *Manser* involved a defendant charged with CSC I and CSC II.[19] The defendant was convicted of both charges.[20] On appeal, he argued that he was deprived of his constitutional right to a fair and impartial jury because the trial court had refused to remove a juror. The juror had failed initially to disclose information relevant to her ability to sit objectively in judgment of the case.[21] Specifically, the juror had failed to disclose that she had engaged in "inappropriate behavior" with a cousin when both were preteens.[22]

---

[16] *Id*. at 667. While I recognize that the juror in *Hannum* was not statutorily disqualified, as is Lara, it is noteworthy that the Court held that the defendant had been denied a fair trial.

[17] *Id.* at 666.

[18] *People v Manser*, 250 Mich App 21; 645 NW2d 65 (2002).

[19] *Id*. at 23-24.

[20] *Id*. at 24.

[21] *Id*.

[22] *Id*. at 26.

The Court of Appeals agreed that this failure to disclose warranted a new trial. It held that, had the juror disclosed during voir dire the inappropriate sexual conduct with her cousin, grounds for dismissal for cause would have been presented.[23] Moreover, the Court noted that, had the information been revealed during voir dire, a peremptory challenge would have been used if a challenge for cause had been denied.[24] Finally, the Court held that seating a juror who withheld information that should have been revealed presents too great a risk that the jury will not be impartial:

> By failing to be forthcoming with her account of the inappropriate sexual conduct she experienced with an older relative, [the juror] subverted the efforts of the trial court and defense counsel to assure that persons having that kind of background were not seated as factfinders. This resulted in at least an appearance of impropriety. . . .[25]

The Court concluded by stating that, under these circumstances, the trial court should have granted defendant some form of relief. It should have either considered the propriety of proceeding with 11 jurors or granted defendant a mistrial.[26]

---

[23] *Id*. at 28.

[24] *Id*.

[25] *Id*. at 30.

[26] *Id*.

In *People v Daoust*,[27] the Court of Appeals addressed whether the trial court deprived the defendant of a fair trial by refusing to remove a juror during trial. At a break in a witness's testimony, one of the jurors indicated to a bailiff that he may have attended the same junior high school as the witness.[28] The defendant conceded that there were no circumstances justifying the juror's discharge for cause. However, he argued that he would have exercised a peremptory challenge to remove the juror had he known of the juror's link to the witness during voir dire.[29] The trial court denied the defendant's request to remove the juror.[30] On appeal, the Court of Appeals held:

> [W]hen information potentially affecting a juror's ability to act impartially is discovered after the jury [has been] sworn, the defendant is entitled to relief . . . if he can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause.[31]

The defendant in *Daoust* did not argue that he had been actually prejudiced or that the juror was removable for cause. Hence, the Court held that he was not entitled to relief.[32]

---

[27] *People v Daoust*, 228 Mich App 1; 577 NW2d 179 (1998).

[28] *Id*. at 6.

[29] *Id*.

[30] *Id*.

[31] *Id*. at 9. The Court of Appeals reiterated this holding in *People v Crear*, 242 Mich App 158, 167; 618 NW2d 91 (2000).

[32] *Daoust, supra* at 9.

## B. *Application*

The aforementioned cases demonstrate a longstanding adherence to a principle expounded in both the federal and state constitutions: criminal defendants are entitled to a fair and impartial jury. I believe that defendant was not afforded this right given the fact that Lara was allowed to participate as a juror. Under § 1307a, to qualify as a juror, a person must not have been convicted of a felony. Because Lara had been convicted of CSC, he was admittedly not qualified to be a juror. Defendant raised the issue of Lara's disqualification as soon as Lara's convictions became known.

Pursuant to § 1354(1), noncompliance with juror qualifications results in error requiring reversal only if the noncompliance actually prejudices the defendant and if the noncompliance is substantial. It remains undisputed that Lara's disqualification is a substantial violation under § 1354(1). He failed to satisfy the criteria necessary to serve as a juror set forth in MCR 2.511(D) and § 1307a. The question then becomes whether defendant was actually prejudiced within the meaning of § 1354(1).

*DeHaven* and its progeny are reasonably similar to this case. In *DeHaven*, the defendant was convicted of rape for engaging in sexual conduct with his stepdaughter. During voir dire, the court asked prospective jurors whether any had experience with a criminal case and whether any of their relatives had been involved in a similar case involving rape. All answered in the negative, including a juror who had a family member who had been convicted of raping a minor. A

11

second juror, who was also related to the family member, also denied any such prior experience. In reversing the conviction and remanding for a new trial, this Court stated:

> In the case at bar the jurors stated on *voir dire* examination that they could fairly and impartially sit as jurors in the case; and that there was no other case that they had heard about which would influence their verdict. . . . We are of the opinion that the relationship of these two jurors to one who had committed a similar crime was such that it deprived them of the capacity to act impartially. Defendant has the right to a trial by an impartial jury. We cannot say that he had such a trial.[33]

Here, the crimes of which defendant is accused and that Lara committed relate to CSC. Moreover, Lara himself committed the crimes, not merely a relative, as in *DeHaven*. The Court of Appeals in this case recognized the similarity, holding:

> Here, the crimes committed by . . . defendant and the challenged juror were also similar in nature [like those in *DeHaven*], relating to criminal sexual conduct. Moreover, the challenged juror himself had committed the crimes, not just a relative as in *DeHaven*. Further, while the challenged juror proclaimed that he was fair, impartial, and listened to the evidence, arguments, and instructions, the jurors in *DeHaven* also claimed an ability to be fair and impartial, yet the Supreme Court reversed. Accordingly, defendant was not afforded a fair and impartial jury and was thus *prejudiced*.[34]

Thus, the Court of Appeals explicitly determined that defendant had been prejudiced. Given the obvious factual similarities between the two cases, I believe

---

[33] *DeHaven*, *supra* at 334.

[34] *People v Miller*, unpublished opinion per curiam of the Court of Appeals, issued January 17, 2008 (Docket No. 273488), at 3 (emphasis added).

12

the Court of Appeals properly relied on *DeHaven*. Likewise, although the challenged jurors in *DeHaven* indicated that they had been fair, impartial, and had listened to the evidence, so too did Lara. However, as the *DeHaven* Court found this effort to be insufficiently protective of the defendant's right to a fair and impartial jury, the Court of Appeals properly granted defendant a new trial.[35]

The majority struggles at length to distinguish *DeHaven* and *Daoust*. It claims that *DeHaven* used a de novo standard of review of the trial court's finding that the two jurors were biased, rather than the clear error standard used today.[36] According to the majority, the *DeHaven* Court also used a de novo standard of review when deciding defendant was entitled to a new trial.[37] At the outset, the standard of review in *DeHaven* is irrelevant to the issue presently before the Court

---

[35] The majority claims that because *DeHaven* was decided before the enactment of MCL 600.1354(1), it should not be considered controlling. This argument is unpersuasive for several reasons. First, in *Crear*, *supra* at 167, the Court of Appeals, relying on *Daoust* (which relied on *DeHaven*) held that a defendant must establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause. *Crear* was decided in light of § 1354(1) in 2000 and implicitly acknowledged the import of § 1354(1) by recognizing that actual prejudice must be shown to warrant a new trial. Second, *Crear* can be read harmoniously with § 1354(1) by incorporating the failure to remove a juror excusable for cause into the parameters of actual prejudice within the meaning of the statute. This is entirely possible, especially given the lack of a definition for "actual prejudice" in § 1354(1).

[36] *Ante* at 18.

[37] *Ante* at 19.

13

of whether defendant was denied a fair and impartial trial in this case.[38]  More importantly, however, wholly absent from *DeHaven* is any language indicating which standard of review was used.  Therefore, the majority's attempt to distinguish *DeHaven* on this basis is unavailing.[39]

---

[38] The majority mistakenly mingles the standard of review in this case with the standard of review used in *DeHaven*.  I agree that the proper standard in this case is review of the trial court's factual findings for clear error.  The decision on the motion for a new trial is reviewed for an abuse of discretion.  My agreement ends there.

It is not relevant what standard the *DeHaven* Court applied.  *DeHaven* is devoid of any indication of the deference (or lack thereof) paid to the trial court's decision in that case.  Thus, it is mere conjecture for the majority to state that the *DeHaven* Court improperly engaged in a review de novo.  *Ante* at 18-19.

[39] The majority opinion seems to overrule *DeHaven* because it applied the wrong standard of review.  Yet, the majority avoids outright abrogation of *DeHaven* by simply stating that *DeHaven*'s holding is neither binding nor persuasive precedent.

Furthermore, the majority discards *DeHaven*'s reasoning because the case was decided before the enactment of § 1354(1).  Yet, the majority relies on *Froede v Holland Ladder & Mfg Co*, 207 Mich App 127; 523 NW2d 849 (1994), and *People v Carey*, 110 Mich App 187; 312 NW2d 205 (1981), as support for its framing of "actual prejudice."  This reliance makes little sense given that these cases also predate § 1354(1).  See also *People v Graham*, 84 Mich App 663; 270 NW2d 673 (1978), which held that the party moving for a new trial must present proof of actual prejudice.  If not, it must satisfy the trial court that the moving party would have successfully challenged for cause or otherwise dismissed the juror had the truth been revealed before trial.

I conclude that *DeHaven* is precedential with respect to Lara's lack of qualification to serve as a juror and defendant's entitlement to a new trial. *DeHaven* should either be read as controlling or should be overruled.  If *DeHaven* is not applicable here, then it is not applicable anywhere and should not be left hanging in the wind.

With respect to *Daoust*, the majority makes no attempt to distinguish the relevant facts. Yet it concludes that, to the extent that *Daoust* holds that a new trial is required whenever a juror would have been excusable for cause, it is overruled.[40] However, there is no need for the majority to overrule *Daoust*. It could be read harmoniously with § 1354(1) in that, if a juror is excusable for cause and is left impaneled, actual prejudice results.

Furthermore, I believe *Manser* provides guidance and demonstrates the soundness of the Court of Appeals decision in this case. A juror in *Manser* indicated after trial had begun that she had engaged in conduct similar in nature to that alleged against the defendant. Despite the defendant's attempt to remove the juror, the court continued the trial with the juror impaneled. In reversing the defendant's conviction, the Court noted that the juror was removable for cause and thus defendant was entitled to a new trial. Although the Court did not use the word "prejudice," its holding essentially stated that the defendant was prejudiced by a juror whose presence created the appearance of a potential bias. Here, Lara would have been removable for cause pursuant to MCR 2.511(D) had he disclosed his previous convictions. Moreover, it is without question that Lara's presence

---

[40] A*nte* at 22.

15

created, at a minimum, an appearance of potential bias.[41]  Therefore, the Court of Appeals properly granted defendant's motion for a new trial.

Finally, the majority attempts to distinguish *Froede v Holland Ladder & Mfg Co*.[42]  *Froede* involved a juror who misrepresented her criminal history on the juror questionnaire.  The juror had hired an assassin to kill a drug informant who had agreed to testify against the juror's ex-husband.  In applying § 1354(1), the Court of Appeals granted a new trial because it held that the juror's criminal conviction and misrepresentation of her criminal background constituted actual prejudice.

The Court pointed out several noteworthy considerations that bear on this case.  First, *Froede* was a civil case.  Although MCR 6.412(D)(2) requires that a trial court in a criminal case excuse a juror challenged for cause under MCR 2.511(D), there is no similar requirement in civil matters.  As the Court noted, "we find that the existence of potential biases or prejudices of a juror with a prior felony conviction is substantially lessened in a civil case as opposed to a criminal case."[43]  Thus, explicit in the Court's holding is its recognition that, in criminal

---

[41] The majority conflates "actual prejudice" with "actual bias."  *Ante* at 14 n 16.  Section 1354(1) requires a showing of actual prejudice.  This is not the same as actual bias.  Indeed, as recognized explicitly by *Holt v People*, 13 Mich 224 (1865), and implicitly by *DeHaven*, *Hannum, Manser*, *Daoust*, *Crear*, and *Froede*, the appearance of partiality or bias creates a reasonable doubt sufficient to satisfy § 1354(1).

[42] *Froede*, *supra*.

[43] *Id*. at 133.

cases, the potential for a convicted felon's bias to reveal itself is higher than in civil cases. Second, the Court noted that the conviction could "reflect on the juror's honesty, and, given the nature of the conviction, th[e] juror may well have infected the jury's deliberations."[44]

Based as it was on the principles expounded in *DeHaven*, *Hannum, Manser*, *Daoust*, *Crear*, and *Froede*, the Court of Appeals decision to grant defendant a new trial was well reasoned. Moreover, the Court explicitly held that defendant was prejudiced and thus satisfied the statutory requirement set forth in § 1354(1).

## III. RESPONSE TO THE MAJORITY

The majority opinion is deficient in several respects. First, it fails to address how the "actual prejudice" standard for purposes of § 1354(1) should be defined.[45] As stated earlier, § 1354(1) requires a finding of actual prejudice

---

[44] *Id*. at 134. In *Froede*, the trial court found that the juror had deliberately misrepresented her criminal history. In this case, the trial court found that Lara was not "attempting to be deceitful or that he had any ulterior motive in answering the[] [jury] question[naire]." The majority distinguishes *Froede* on this basis. While the trial court found that Lara's responses lacked deceit, Lara had no incentive to state that he had been dishonest or deliberately misrepresented his criminal history. Thus, absent an admission by Lara, the trial court had no basis on which to determine whether Lara had been deceitful in answering the questionnaire.

[45] The closest the majority comes to defining actual prejudice is its assertion that juror misconduct is only prejudicial if it denies a defendant an impartial jury. *Ante* at 8. Essentially, this is an outcome-determinative standard in disguise. The majority further opines that "[t]he burden is on the defendant to establish that the juror was not impartial . . . ." *Ante* at 11, citing *Holt v People*, 13

17

resulting from an error in order for reversal to be required. However, nowhere in that section is there a definition of "actual prejudice."

*DeHaven* and its progeny, including *Daoust* and *Crear*, suggest that a defendant need only establish (1) that he was either actually prejudiced by the disqualified juror's participation or (2) that the juror was excusable for cause. This line of cases seems to suggest that actual prejudice occurs automatically upon a juror's improper participation in a case. While § 1354(1) and caselaw may seem to offer different interpretations of what a defendant must establish to obtain a new

---

Mich 224, 228 (1865). However, *Holt* requires a defendant to show only that a juror's impartiality is in reasonable doubt. *Id*. at 227. Thus, contrary to the majority's analysis, *Holt* does not either explicitly or implicitly require a defendant to prove actual bias by the disqualified juror. Yet actual bias is what the majority requires in this case. Indeed, although the majority correctly cites *Holt*, it fails to recognize that the reasonable doubt standard in *Holt* requires less than actual bias to establish actual prejudice. Compare *ante* at 11 with *ante* at 16 n 16. The majority, under the guise of statutory interpretation, is effectively legislating from the bench by crafting the words "actual bias" into § 1354(1), when no such language exists.

Furthermore, the majority's analysis fails to provide guidance to lower courts. Specifically, it leaves unresolved how a defendant is to prove actual prejudice (or partiality as the majority would have it) absent an admission by a juror that he possessed bias in rendering a verdict.

The majority also selectively cites Note, *When jurors lie: Differing standards for new trials*, 22 Am J Crim L 733, 737 (1995), for the proposition that some states require a showing of juror bias before they will grant a defendant a new trial. *Ante* at 9 n 9. However, this article reveals that the states employ different standards including (1) a showing of possible bias, (2) a showing that the juror would have been struck for cause had the undisclosed information been revealed on voir dire, and (3) a showing of no bias at all. *See TK Stanley, Inc v Cason*, 614 So 2d 942, 949 (Miss, 1992); *Gainesville Radiology Group v Hummel*, 263 Ga 91, 93; 428 SE2d 786 (1993); *Wright v Bernstein*, 23 NJ 284, 294-295; 129 A2d 19 (1957).

18

trial, it is unquestionable that one must show actual prejudice. However, because the statute does not offer its own definition of "actual prejudice," a starting point for analysis is the dictionary definition of the words. "Actual" means "(1) existing in act, fact, or reality; real" and "(2) existing now; present; current."[46] "Prejudice" means:

> (1) an unfavorable opinion or feeling formed beforehand or without knowledge, thought, or reason. (2) any preconceived opinion or feeling, either favorable *or* unfavorable. (3) unreasonable feelings, opinions, or attitudes, [especially] of a hostile nature, regarding a racial, religious, or national group. (4) such attitudes considered collectively . . . . (5) damage or injury; detriment . . . . (6) to affect with a prejudice.[47]

On the basis of these definitions, a defendant should have to demonstrate an existing unfavorable opinion or the presence of a preconceived opinion or feeling, whether favorable or unfavorable.[48]

Applying this requirement to this case, the Court of Appeals should be affirmed. Lara must have had preconceived notions about defendant, whether

---

[46] *Random House Webster's College Dictionary* (2001).

[47] *Id.* (emphasis added).

[48] Contrary to the majority's belief, this standard does not contradict *Holt*. *Holt* requires that a defendant show only that a juror's impartiality is in reasonable doubt. This proof is merely a means to demonstrate actual prejudice as required by § 1354(1).

In any event, it is noteworthy that the majority exhibits its usual unquestioning confidence in its ability to decide which dictionary definition of a word the Legislature intended. See, e.g., *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44, 57-58; 746 NW2d 282 (2008). Plucking one definition from a basket of many is nothing less than speculation in the guise of omniscience.

favorable or unfavorable, merely because he had committed crimes similar to those charged here.[49] This reasoning is also in line with *DeHaven*, *Hannum*, *Manser*, *Crear*, and *Daoust*.

This result also makes practical sense, which highlights the second flaw in the majority opinion. Trial courts must exclude unqualified jurors if facts are present indicating that a juror is unfit for service.[50] It logically follows, then, that a defendant should not be burdened with proving prejudice beyond what a court must find to exclude an unqualified juror. To do so would allow jurors to conceal relevant information and then sit on juries anyway. In effect, this would create an insurmountable standard for a defendant to overcome.

Promoting juror honesty is a laudable goal and one that is essential to the selection of a fair and impartial jury in criminal cases. It is likewise essential to the fair administration of justice. If the standard for obtaining a new trial based on juror dishonesty is so high that it can rarely be established, then there is no remedy

---

[49] I refute the majority's contention that it is "pure speculation" to believe that an ex-felon would have some sort of "prejudice," as defined above, about a defendant. *Ante* at 13 n 15. One convicted of the same crime charged against a defendant would, at a minimum, be thoroughly familiar with the nature of the crime(s) charged. The convict would know how such crimes are committed, the emotions and feelings associated with the guilt accompanying the criminal act(s), and criminal procedure in general.

[50] MCR 6.412(D).

for defendants convicted by dishonest jurors.[51]  It is for this reason that the majority opinion becomes unworkable and manifestly unjust.

Furthermore, there is no indication that the Legislature intended such a heightened standard.  Section 1354(1) merely indicates that "actual prejudice" must be shown.  If jurors such as Lara sit on juries despite their lack of qualifications, evidentiary hearings will be necessary to determine whether the disqualified juror infected the entire jury.  This would require the presence of all deliberating jurors.  Arguably, such a hearing would border on impeachment of a verdict through cross-examination of the jurors regarding their deliberations, a practice that is discouraged.[52]  The holding of such evidentiary hearings would become extremely burdensome on the court system.  Yet it remains unclear in what other way a defendant could meet an actual prejudice burden under the

---

[51] Section 1354(1) requires a showing of actual prejudice.  However, the majority opinion interprets actual prejudice so narrowly that prejudice will be impossible to prove, absent a juror admitting actual bias.  *Ante* at 13.  This standard is too strict.  Often, jurors will not admit bias, especially after rendering a verdict, because they have a stake in defending their decision.  Furthermore, the majority opinion implies that anytime a former juror states that he or she was unbiased, a defendant cannot demonstrate prejudice.  Presumed bias must be accepted in some instances, and this is one such instance.  In fact, the majority opinion's exceedingly narrow standard effectively renders the jury qualification standards meaningless.  Any verdict that was rendered with an unqualified juror is unassailable because simply showing a lack of qualification(s) is not enough to show prejudice.  I believe that the juror qualifications set forth in MCR 2.511(D) should be given more force.

[52] *Consumers Power Co v Allegan State Bank*, 388 Mich 568; 202 NW2d 295 (1972).

majority's standard. Essentially, overturning a verdict because of juror misconduct becomes impossible.

Finally, the majority engages in a purely speculative exercise in its attempt at labeling Lara and other unqualified jurors who have been convicted of felonies, as favorable to criminal defendants. Without question, criminal defendants are entitled to a fair trial, which includes the impaneling of an impartial jury. The seating of a biased juror, irrespective of which way his or her bias is expected to cut, is an error in the eyes of the law. This is evidenced by statutes and court rules that seek to weed out such errors.[53] Indeed, assuming—or guessing, as the majority does—who benefits from the bias is folly. At some point, a juror's past experience must lead to a presumption of bias because of the juror's inherent knowledge from experience. In this case, this presumption exists because Lara's past experiences are so similar to the current defendant's alleged crimes.

The majority wrongly speculates that convicted felons on juries will help defendants. Moreover, it should not engage in any exercise that could harm the administration of justice. Essentially, the majority opines that a convicted felon's bias is acceptable because it is assumed that most felons will be sympathetic toward defendants. Is it now the law that all felons are assumed to be sympathetic to defendants and thus they can never be challenged by defendants for bias? Moreover, are felons' biases always assumed against prosecutors, such that if the

---

[53] The majority ignores the purpose of MCR 2.511(D) and MCL 600.1337. These rules were set forth in an attempt to eliminate potential bias from juries.

parties' positions in this case were reversed, the prosecutor would have a strong claim of bias? Are felons so homogenous that such a broad generalization is worthy of judicial codification? I think not.

## IV. CONCLUSION

The Court of Appeals properly held that defendant was entitled to a new trial. In doing so, the Court properly relied on *DeHaven* and its progeny for the proposition that a convicted felon serving on a jury constitutes prejudice within the meaning of § 1354(1). Accordingly, I would affirm the Court of Appeals and remand this case to the trial court for a new trial.


Marilyn Kelly



Cavanagh, J.  I concur with Justice Kelly's result.



Michael F. Cavanagh

23